# CHARLESTON.

FRENCH *v.* BENNETT, JUDGE.

Submitted October 10,.1911.   Decided October 31, 1911.

1.  MANDAMUS—*Courts—Refusal to Take Jurisdiction.*
    If an inferior court refuse to take and exercise jurisdiction
    of a case when by law it has jurisdiction, *mandamus* will be
    awarded to compel it to do so.   (p. 654.)

2.  ELECTIONS—*Contest—Jurisdiction—County Courts.*
    The county court of Fayette county has jurisdiction of a con-
    test for the office of judge of the criminal court of that county,
    and the circuit court of that county has jurisdiction of an ap-
    peal therein.   (p. 655).

Petition by Edmund R. French for writ of *mandamus* against
W. R. Bennett, Judge, and others.

*Writ Awarded.*

*W. E. R. Byrne* and *C. R. Summerfield,* for petitioner.

*Dillon & Nuckolls,* for respondents.

BRANNON, JUDGE:

At the general election in November, 1910, John T. Simms
was the Republican candidate for judge of the criminal court
of Fayette county, and Edmund R. French was the Democratic
and Independent Republican candidate.   On the face of the re-
turns French was elected, and on a recount of the ballots Simms
was declared elected.   French then instituted a contest in the
county court, which sustained a demurrer and a motion to quash
the petition and notice filed by French, and dismissed them on
the ground that the office of judge of said criminal court was a
state office and the county court had no jurisdiction.   French
appealed to the circuit court.   The circuit court sustained a de-
murrer to the petition and notice of contest, stating in its order
that its action was upon the ground that the office of judge of
the criminal court of Fayette county is a state, and not a county
office.   Thus it held that the court had no jurisdiction, and re-
fused to proceed further and hear the merits of the contest.
French has applied to this Court for a writ of *mandamus* to re-

quire the circuit court to entertain jurisdiction of said appeal and proceed to hear and determine it. The first question is, whether *mandamus* is the proper remedy. For Simms a volume of authority and argument is presented for the claim that a writ of error is the proper remedy and that *mandamus* does not lie. It has over and over been held that *mandamus* does lie, where the inferior court refuses to take jurisdiction where by law it ought to do so. *Roberts* v. *Paul,* 50 W. Va. 528. True a writ of error would lie in the case, but that does not exclude *mandamus* in a case where the inferior court refuses wholly to entertain the case on the claim of want of jurisdiction. *National Bank* v. *Burdette,* 71 S. E. 399; *King* v. *Mason,* 60 W. Va. 670. In order to shut out *mandamus* the other remedy must be adequate under the circumstances of the particular case, as these cases hold. If we drive French to a writ of error we would have the delay of going through this Court, and pending his writ of error the whole or material part of the term of four years would expire; and if he reversed the case he would have to go back to the circuit court and try the merits. If the term should run out pending his writ of error it would be dismissed as a moot case, or the term may run out during the trial of appeal in the circuit court; whereas, *mandamus* compels the immediate trial of the appeal. But I repeat that *mandamus* lies when an inferior court ought to take jurisdiction, but refuses to do so.

In such case *mandamus* speedily starts in motion the obstructed wheels of justice.

Great length of argument by counsel and many authorities bear on the question whether the office of judge of the criminal court is a state or county office. As our code in ch. 6, sec. 3, gives the county court jurisdiction for trial of contests for only county and district offices, and sec. 15 provides a special tribunal for contests as to state offices, it is confidently insisted by counsel for Simms that the county court has no jurisdiction for this contest, indeed that no court has, because it is a state office. We do not deem it material to decide this question. We are satisfied that the county court has jurisdiction to try this contest, and as it has jurisdiction the circuit court has jurisdiction of the appeal. The constitution in article 4, making general provisions as to elections, in sec. 11 says: "The Legislature shall

prescribe the manner of conducting and making return of election, and of determining contested elections." Therefore, it matters not whether an office has the character of a state or county office, a contest for it is regulated by statute, and if we can find a statute giving the county court power to try the contest we have in hand, it plainly has jurisdiction. This power is given by chapter 86, Acts of 1891, creating the criminal court of Fayette county. It provides for the election of a judge. It says "Poll-books for said election shall be prepared by the clerk of the said county court, and by him delivered to the commissioners, or some one of them, appointed to superintend the election on that day; and said election shall be superintended, conducted and returned, and the result thereof ascertained, in all respects as is provided for by law in regard to the election of county officers, and all the provisions of the law in regard to general elections shall, so far as applicable, govern and apply to elections held under the provisions of this chapter; and the result of said election shall be ascertained by the commissioners of the county court of said county, in the same manner as required in elections for county officers held under the general law; and within five days after it is ascertained, the result thereof shall be certified to the governor, and he shall issue a commission to the person elected." Here we have it broadly provided that the result of such an election shall be ascertained, in all respects, as is provided for by law in regard to the election of county officers, and all the provisions of the law in regard to general elections shall govern and apply to elections under that act. I hold that ascertaining the result of an election includes a contest, since the general laws of elections provides not only for making out precinct returns and ascertaining the result from them and by counting the ballots, but for contests also. I hold that when there is a contest, the result, the final result, is not ascertained until such contest ends. Its result tests the title of the office. Judgment therein declares the final result. In such case there is no result until the end of the contest. Look at the broad language above quoted from the statute. It says that the election shall be conducted and returned, and the result ascertained, in all respects, as provided by law in regard to the election of

county officers, and all the provisions of law in regard to general elections shall apply to an election under this act.

As stated above the code provides that the county court shall try contests for county offices. Can we suppose for a moment that when the Legislature passed the act creating the criminal court and made such broad provisions, saying that an election under it shall be conducted, returned and the result ascertained in all respects as provided by law for county offices, and not only that, but all the provisions of law in regard to general election should apply, the legislature did not know that the general law touching elections provided for the trial of contests, did not intend to apply the law touching contests triable by the county court in such cases? Can we suppose for a moment that it intended to stop with the count of the precinct returns or counting of ballots, and leave contested elections unprovided for? This is a remedial statute and, we must not give it a construction which will leave a contestant without a court for the trial of his case; for if section 3 of chapter 6 of the code giving jurisdiction to the county court to try contests for county officers does not apply, then there is no tribunal for the trial of this contest, because the provisions of sec. 15 setting up a special tribunal for the trial of certain contests is limited to treasurer, auditor, state superintendent of free schools, attorney-general, judge of the supreme court and judge of a circuit court in its very letter. This would be a *casus omissus,* and courts in the construction of statutes never, almost never, allow a construction leading to this result. We can not do so in this case in defiance of the language of the statute from which we have quoted. True sec. 1 of chapter 6 does not mention the judge of the criminal court, but it provides contests for "any county or district office"; but the act establishing the criminal court of Fayette county says that the result of an election for its judge shall be ascertained as provided as to the county officers by general law. Thus, it incorporates sec. 3, chapter 6 into the act, makes it a part of the act, for the purpose of the act. To give this act any other construction would be highly detrimental to public interest and administration. If we do not so construe this act where is there any law for a contest as to an election for judge of the criminal court? To deny such construction would run

counter to well established rules of construction of statutes. In *State* v. *Snyder,* 64 W. Va. 660, we laid down the following principles: "A statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and. intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith." In *Hassen* v. *City of Chester,* 67 W. Va. 278, we find the following rule of construction: "That which is plainly within the spirit, meaning and purpose of a remedial statute, though not therein expressed in terms, is as much a part of it as if it were so expressed." "Of two permissible constructions of a statute, one working manifest injustice and the other equity and fairness, the latter is to be adopted, upon the presumption that the legislature did not intend the result flowing from the former." It is even contended that the comprehensive provisions of the act under consideration are applicable only to the first election under the act. This position is wholly untenable on first view. The first section of the act establishes the court in permanence. The second section provides that on the third Tuesday in May, 1891, and on the first Tuesday after the first Monday in November, 1894, and every *four years thereafter* a judge shall be elected. Is it not preposterous to say that all the provisions of that act ceased after the first election, not withstanding that it provides for an election every four years? Is a part of the act enduring and the other not? An election every four years and no means of conducting it, returning it and ascertaining its results? Notice in the quotations given above the language is that the general election law shall apply to "elections" under the act, using the plural, "elections." Here is a permanent act without limit of duration. The only ground for this contention must be that sec. 4 provides a notice for the first election. That was designed only for the first election; that clause has no other office. We award the *mandamus.*

*Writ Awarded.*