VILLAGE OF BRIDGEPORT, OHIO, *et al. v.* PUBLIC SERVICE COMMISSION *et al.*

(No. 9446)

Submitted January 13, 1943. Decided February 9, 1943.

Koontz & Koontz, J. Campbell Palmer, III, Joseph Heinlein, Jr., and Ross Michener, for relators.

John D. Phillips and A. W. Petroplus, for respondents.

KENNA, JUDGE:

We are asked by the petition filed herein by the Village of Bridgeport, Ohio, the County of Belmont, Ohio, and C. A. Jones, a resident of Wheeling Island, intervenor, seeking a peremptory writ of mandamus, to require the Public Service Commission to dispose of a complaint filed before it by the relators here on March 4, 1942. The Commission entertained the complaint but declined to act in response to its prayer, which is to restore the toll charges upon the four bridges connecting Wheeling Island with the mainland on the West Virginia side to the east and the Ohio side to the west as they were immediately prior to March 26, 1941, when the title to the four bridges was transferred to the City of Wheeling by the utility owners, immediately subsequent to which the City of Wheeling, by its independent action, lifted the tolls from the bridges connecting the island with Wheeling proper and doubled the tolls upon those leading into Belmont County, Ohio. The complaint before the Public Service Commission immediately followed, and on August 7, 1942, the complainants, who are the relators in this proceeding, filed here a mandamus petition which sought to require the Public Service Commission at that time to consider and rule upon the complaint now under consideration, and alleged that

the Commission had set it down for hearing in the previous month and in spite of the protestants appearing and requesting that they be heard, had then continued the matter because of the fact that the City of Wheeling had requested them to do so because of pending negotiations between it and the State Road Commission looking to the transfer of title to the four bridges to the Road Commission. This Court declined to award the rule upon the presentation of the former petition largely because we then thought that it was a matter that had been submitted to the Commission and that its delay in reaching a conclusion was not unconscionable and therefore the petition in mandamus at that time was premature.

On September 8, 1942, the matter was finally submitted to the Public Service Commission, and after deliberating for thirty· days, it entered the following order:

"This proceeding came on to be heard this 8th day of October, 1942, upon the complaint of the Village of Bridgeport, Ohio, and County of Belmont, Ohio; upon the intervening petition of C. A. Jones; upon motion to dismiss heretofore filed by the Wheeling and Belmont Bridge Company; upon the motion to dismiss heretofore filed by the Wheeling Bridge Company; upon the answer heretofore filed by the Wheeling and Belmont Bridge Company; upon the answer heretofore filed by the Wheeling Bridge Company; upon the answer of City of Wheeling, a municipal corporation; upon the reply of complainants to answer of defendants; upon the oral motion made by complainants to dismiss from this proceeding the defendants, Wheeling and Belmont Bridge Company and the Wheeling Bridge Company; upon the argument of counsel and upon all papers and exhibits filed of record; all orders heretofore entered and action taken in this proceeding; and upon inquiry and investigation respecting an alleged sale of the bridges involved in this proceeding by the City of Wheeling to the State Road Commission of West Virginia.

Upon consideration of all which the Commission is of the opinion to and doth sustain the motion made by complainants to dismiss from this pro-

ceeding the defendants, Wheeling and Belmont Bridge Company and Wheeling Bridge Company, and it is so ordered.

The Commission further finds from the papers filed in this cause and from representation of counsel made at a hearing held on the 8th day of September, 1942, that a transaction leading to the sale of the bridges was then pending between the City of Wheeling and the State Road Commission of West Virginia and the Commission being this day advised by the State Road Commission that said pending sale has been consummated to the extent that the said City of Wheeling and the State Road Commission have agreed upon the terms of said sale and that if said agreement is formally approved by the city council and the proper state authorities, delivery and transfer of said bridges will be made within a few weeks time.

The Commission is of the opinion that a determination by it at this time of the issues presented, would serve no useful purpose, would be without any practical effect, and upon the delivery of said bridges to the State Road Commission of West Virginia, would not be binding upon that body, and for the reasons herein stated the Commission declines to determine the issues presented until a final disposition has been made of the aforesaid pending transactions relating to the sale of said bridges.

This proceeding is continued to a date hereafter to be fixed by the Commission."

Accompanying the present petition in mandamus the relators also presented their petition for an appeal from the foregoing order. Their application for an appeal was declined by this Court for the reason that the Commission's order, on its face, lacked the required finality.

The first question that we believe we are required to pass upon is whether the Public Service Commission acted properly in entertaining this complaint against the City of Wheeling which, in acquiring what were then four toll bridges and continuing to maintain and operate two of

them without toll and two with increased charges, was exercising the functions of a public utility. We are of the opinion that Code, 24-1-1, expressly defining the term "public utility", over which the Public Service Commission is granted regulatory powers, as including municipalities is a sufficient grant of power to give the Commission the right to regulate the conduct of the City of Wheeling to the extent that such city engages in conducting the business of a West Virginia public utility, and that if it is proceeded against as such before the Commission, that body has what would be spoken of in a legal proceeding as jurisdiction of the parties. We do not think that it is necessary at this time to determine that the Public Service Commission has jurisdiction of any part or all of the four bridges, or has what in a legal proceeding is sometimes spoken of as jurisdiction of the subject matter, meaning the power to prescribe the tolls over and regulate the management of the bridges involved.

That being so, the question arises: Was the refusal to act on the part of the Public Service Commission a capricious exercise, or an abuse, of its discretion? We are of the opinion that under the circumstances, and particularly for the reasons stated in the Commission's order, it was plainly an instance in which a public body was declining to perform a required duty in the determination of a controversy for reasons impertinent to the matter under consideration.

As we understand the position of the Public Service Commission, it is that in order to decide the questions raised by the complaint filed before it by the relators here, it would be necessary for it to conduct what is commonly called a rate inquiry respecting all of the four bridges. As we read the prayer of the complaint filed by relators before the Commission, we are convinced that the Commission is plainly wrong in interpreting the complaint as so requiring. Of course, if the Commission deemed it proper it could and would, of its own volition, conduct that sort of an inquiry, but all that is asked of it in considering the complaint is to decide the question of whether

it presents a proper case to restore the tolls upon all four bridges as exhibited by the tariffs in effect upon the day that they were acquired by the City of Wheeling. We, even with full consciousness of the arduous duties required of the Commission, cannot act upon the assumption that its decision of that question would be unduly burdensome or involve an excessively extensive investigation.

In discharging the functions required by the statute of its creation and subsequent related acts, the Public Service Commission is dealing with instrumentalities that certainly affect the public interest and welfare in many vital ways, and we believe it is quite apparent, even though the legislative purposes are not expressed in its enactment relating to the Commission's duties, that the expeditious and prompt exercise of its powers is a necessarily implied requirement. The Commission is an administrative body whose duties demand the exercise of quasi judicial functions. It has no arbitrary discretion, so that its powers are not to be exercised in a manner that is controlled by what, in its judgment, the expediency of the situation with which it is confronted requires.

Considering the powers vested in the Public Service Commission in the dual aspect of an administrative body exercising quasi judicial powers, in our opinion, the exercise of neither class of powers can be properly delayed for reasons which do not arise in the matter under consideration, no matter how closely, in the opinion of the acting agency, they may be related thereto. Certainly this is true of an administrative body and we believe that this conclusion is borne out by the provisions of the act creating the Commission, by the terms of which the Commission is definitely required to act within a prescribed period in certain matters. See Code, 24-2-4. That being so of administrative bodies and also true of judicial bodies (*Ault* v. *O'Brien, Judge,* 121 W. Va. 705, 6 S. E. 2d 228; *French* v. *Bennett, Judge,* 69 W. Va. 653, 72 S. E. 746; see also, *Ex parte Zoring,* 94 U. S. 418, 24 L. Ed. 165, and *Hudson* v. *Parker,* 156 U. S. 277, 288, bottom), we believe that it necessarily follows that the same rule applies to an ad-

ministrative body exercising quasi judicial functions (*Wiley & Booker* v. *County Court,* 111 W. Va. 646, 163 S. E. 441), and that it is not the right of such a body to suspend unduly, by awaiting the alternative occurrence of a future event, the exercise of its proper function. While this Court will not suggest the course of conduct to be pursued by a different division of the state government, nevertheless, where its refusal to act is admittedly based upon expediency and is, in fact, an arbitrary disregard of what otherwise would be its ordinary duty, plainly we are required to act.

We think it is entirely unnecessary to discuss the proper and improper use of the peremptory writ of mandamus. Certainly, it cannot be used to control the manner in which an elective duty shall be performed, or to direct the exercise of discretion. Neither should it be used to unduly hasten the execution of deliberative determinations, as we believed the awarding of a rule upon the former application might do. Those considerations, we believe, the order of the Public Service Commission, shown above, has eliminated entirely, and has quite clearly made the only issue before this Court the question of whether the Commission will be required to act, and not the nature of its action. That being so, our conclusion is that the peremptory writ of mandamus directed to the Public Service Commission and requiring it either to restore the tolls on the four Wheeling bridges as they existed on March 26, 1941, and immediately prior thereto, or decline to do so, pending the result of which the order of this Court staying further proceedings on the part of the City of Wheeling shall remain in effect.

*Writ awarded.*