ANDERSON & ANDERSON CONTRACTORS, INC., *et al.*

*v.*

IRA S. LATIMER, JR., *Dir., et al., etc.,*

*Succeeded by David C. Callaghan, et al.*

(No. 13976)

Decided March 27, 1979.

804

*Walter W. Burton, Pauley, Curry & Thaxton, Arden J. Curry, Thomas H. Vanderford, IV, Robert H. Bork* for appellants.

*Chauncey H. Browning,* Attorney General, *Nicholas W. Johnson,* Deputy Attorney General, *Richard L. Earles, Robert D. Pollitt,* Assistant Attorneys General, for appellees.

NEELY, JUSTICE:

This appeal challenges the retroactive application of surface mining reclamation standards enacted in 1971 to operations where the reclamation was completed before the effective date of the 1971 enactments; further, appellants challenge the constitutionality of *W.Va. Code,* 20-6-14a [1971] which provides for pre-hearing cessation of surface mining operations upon an inspector's order. Appellants, owners, contractors, lessees and sublessees of various surface mining operations, instituted an action in the Circuit Court of Kanawha County against appellees, individual members of the Reclamation Commission, seeking a declaratory judgment and an injunction to prevent wholesale enforcement of the 1971 enactments against some of their operations. That court determined that the 1971 enactments may be applied in

their entirety to surface mining operations notwithstanding completed reclamation before the effective date of the new standards and further held that *W.Va. Code*, 20-6-14a [1971] concerning pre-hearing cessation is constitutional. We reverse in part, affirm in part, and remand.

I

The first question we must decide is whether the 1971 amendments to the Surface Mining and Reclamation Act of 1967 apply in their entirety to surface mining operations begun under permits issued before the effective date (13 March 1971) of the 1971 amendments. In 1967 the West Virginia Legislature enacted what was the first comprehensive system for regulation of the surface mining industry in our State. One provision of the comprehensive act provided in pertinent part, that:

> Irrespective of the date of issuance of a permit, all operators shall immediately conform to any statutes enacted or rules or regulations adopted on the effective date of such statute or rule and regulation. The provisions of this section shall not be construed to require the regrading or replanting of any area on which such work was satisfactorily performed prior to the effective date of the statute or rule and regulation. *W.Va. Code*, 20-6-31 [1967]

This section was not amended in 1971 and thus remained the law even *after* the passage of the 1971 amendment. It should be obvious that *W.Va. Code*, 20-6-31 [1967] informed surface mining operators that the standards under which they obtained a permit might be changed and that the new standards would be binding on their operations; however, retroactivity would apply *only* to the extent of work *not satisfactorily completed* by the effective date of the new standards. In 1971, while work was going forward under various surface mining permits issued pursuant to the 1967 Act, the Legislature enacted new regrading and reclamation standards including, for example, a thirty foot limitation on the height of highwalls, *W.Va. Code*, 20-6-13 [1971]. In 1972

the West Virginia Department of Natural Resources issued regulations under the 1971 enactments including West Virginia Surface Mining Reclamation Regulation § 3.01 which provides:

> *Conversion*—Any operator holding a valid surface mining permit issued prior to the effective date of these regulations, shall within 60 days after the effective date thereof, convert such permit and bond or other securities posted therefor to comply with all the provisions of Article 6, Chapter 20, Code of West Virginia, as amended, and all rules and regulations promulgated thereunder, if mining operations are to continue after said date. The provisions of this regulation shall not be construed to require the regrading or replanting of any area where such work was satisfactorily performed *and approved* prior to the effective date of these regulations. [Emphasis added].

The underlined portion of the quoted regulation adds a new requirement of "approval" to *W.Va. Code*, 20-6-31 [1967] as opposed to the statute's requirement that the work just be satisfactorily performed.[1] Appellants contend, and we agree, that the effect of the added requirement is to make the 1971 standards completely retroactive (as opposed to partially retroactive as guaranteed by *W.Va. Code*, 20-6-31 [1967]) since according to the Department of Natural Resources "approved" means "released" and a permit can only be "released" after *all* reclamation has been completed, *i.e.*, the final reclamation map has been submitted and the reclamation bond has been released. Consequently, the regulation quoted

---

[1] We are not convinced by appellees' argument that "satisfactorily performed" and "approved" mean the same thing because the Surface Mining and Reclamation Act only provides for approval of a reclamation grading plan on an entire permit tract rather than "piecemeal" approval. While the Act does not provide a mechanism or standards for evaluating satisfactory performance as opposed to approved performance, we must conclude that the Legislature meant satisfactory performance to be a separate standard because if it did not the limited retroactivity proviso of *W.Va. Code*, 20-6-31 [1967] would be rendered meaningless.

above insures that no operation mining under a pre-1971 permit which was still in operation in 1971 could have any "approved" work. This seems to leave operators working under pre-1971 permits three choices: (1) the operator can stop mining under the permit and get his bond released by reclaiming under the 1967 standards; (2) the operator can conform to the 1971 reclamation standards only as to land not satisfactorily regraded and replanted prior to the effective date of the 1971 amendments; or, (3) the operator can completely accept the 1971 standards by redoing work satisfactorily completed under 1967 standards. None of the choices is attractive: the first would result in abandonment of valuable property; the second could result in a perpetual ban on obtaining any future permits to mine coal in West Virginia for failure to convert a permit under Reg. § 3.01; and, the third would confound legitimate business expectations, since the coal operators were led by *Code*, 20-6-31 [1967] to rely on the promise that satisfactorily reclaimed land under the 1967 standards would be accepted.[2]

We still must determine whether Reg. § 3.01 has any authority other than the statutes covering the same subject matter. Obviously it does not. *W.Va. Code*, 20-6-24 [1967] provides that:

> The commission [Reclamation Commission] shall promulgate rules and regulations, in accordance with the provisions of chapter twenty-nine-A [§ 29A-1-1 et seq.] of said *Code*, for the effective administration of this article.

Although an agency may have power to promulgate rules and regulations, the rules and regulations must be

---

[2] We cannot accept appellees' contention that since permits must be renewed yearly the appellants who renewed their permits after 13 March 1971 (the effective date of the 1971 amendments) voluntarily accepted the duties, responsibilities and requirements of the 1971 amendments. Those appellants had no choice but to renew the permits or forego mining. Surprising as it may seem to some, economic duress is not limited in applicability to the proverbial little old lady in tennis shoes but can be exercised against large business ventures as well.

reasonable and conform to the laws enacted by the Legislature. *Sheppe v. West Virginia Bd. of Dental Exmrs.*, 147 W.Va. 473, 128 S.E.2d 620 (1962). By West Virginia Surface Mining Reclamation Regulation § 3.01, the West Virginia Department of Natural Resources has attempted to make completely retroactive statutory provisions which were clearly intended by the Legislature to have only limited retroactivity; therefore, the regulation must fail. We were recently confronted with another regulation in excess of statutory authority in the case of *Walls v. Miller*, ___ W. Va. ___, 251 S.E.2d 491 (1978) where the Director of the West Virginia Department of Mines issued regulations permitting men to be in by equipment contrary to *W.Va. Code*, 22-2-6 [1971] which provides that no person shall be in by equipment in the ventilating split while such equipment is being moved. We held in that case that the legislation had to be interpreted exactly as written, and we hold the same with regard to the present question regarding reclamation.

Of course, appellants can avail themselves of pre-1971 standards only for work "satisfactorily performed," *W.Va. Code*, 20-6-31 [1967], and, therefore, we note that whether work has been "satisfactorily performed" is to be determined by the objective standard of what a reasonable man knowledgeable about surface mining would consider satisfactory performance according to the statutes, rules, and regulations in effect under the 1967 law. Certainly it would be an ironic result if the Legislature's guarantee or predictability with regard to reclamation standards could be rendered a nullity by permitting the question of "satisfactory performance" to be resolved entirely by the subjective judgment of the official who must be "satisfied. *Quicquid in excessu actum est, lege prohibetur!*

## II

We must now examine the constitutionality of *W.Va. Code*, 20-6-14a [1971] which provides:

> Notwithstanding any other provisions of this article, a surface-mining reclamation inspector shall have the authority to order the immediate

cessation of any operation where (1) any of the requirements of this article or the rules and regulations promulgated pursuant thereto or the orders of the director or the commission have not been complied with or (2) the public welfare or safety calls for the immediate cessation of the operation. Such cessation of operation shall continue until corrective steps have been started by the operation to the satisfaction of the surface-mining reclamation inspector. Any operator who believes he is aggrieved by the actions of the surface-mining reclamation inspector may immediately appeal to the director, setting forth reasons why the operation should not be halted. The director shall determine when and if the operation may continue.

Appellants contend *Code*, 20-6-14a [1971] is unconstitutional because: (1) surface mining inspectors are given authority to "make and apply law"; and, (2) no timely and effective hearing to review shutdown orders is provided. If appellants' assertions were correct, the provision would fail; however, appellants incorrectly interpret the statutory scheme. While on first impression *Code*, 20-6-14a [1971] would appear to give inspectors limitless powers to shut down a mining operation where "the public welfare or safety calls for the immediate cessation of the operation,"[3] the Legislature has provided sufficiently clear guidance on when the public welfare or safety is threatened:

> [A]lthough surface mining provides much needed employment and has produced good safety records, unregulated surface mining causes soil erosion, pyritic shales and materials, landslides, noxious materials, stream pollution and accumulation of stagnant water, increases the likelihood of floods and slides, destroys the value of some

[3] The other basis for cessation orders provided in *W.Va. Code*, 20-6-14a [1971] are violation of the statute, rules and regulations or orders of the director and do not present vagueness problems. The director's power to order operation cessations, *W.Va. Code*, 20-6-11 [1971] while not specifically at issue will be governed by the principles of this opinion.

lands for agricultural purposes and some lands for recreational purposes, destroys aesthetic values, counteracts efforts for the conservation of soil, water and other natural resources, and destroys or impairs the health, safety, welfare and property rights of the citizens of West Virginia, where proper reclamation is not practiced. *W.Va. Code*, 20-6-1 [1967].

By virtue of its authority to regulate, *W.Va. Code*, 20-6-6a [1967], the Reclamation Commission has promulgated regulations implementing protections against the specific evils listed in *Code*, 20-6-1 [1967] and it is on the basis of these and other regulations that inspectors may order cessation of mining operations;[4] therefore, all cessation orders must be based on specific statutes or regulations or upon conditions which so clearly endanger the public safety or welfare as to be considered proscribed by any fair reading of the regulatory scheme. By including the term "public welfare or safety" the Legislature sought only to codify the common law principle that powers reasonably necessary to carry out a public mandate will be implied in an implementing statute. *Hogan v. Piggott*, 60 W.Va. 541, 56 S.E. 189 (1906).

Having determined that *W.Va. Code*, 20-6-14a [1971] is not unconstitutionally vague, we must next examine appellants' claim that it nevertheless violates procedural due process guarantees. Our inquiry is two-fold: (1) is a pre-cessation hearing required; and, (2) if a pre-cessation hearing is not required, does *W.Va. Code*, 20-6-1 *et seq.* [1967] provide an adequate post-cessation hearing?

Whether a pre-cessation hearing is constitutionally guaranteed is determined by applying the balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1975) which compares:

First, the private interest that will be affected by the official action; second, the risk of an erro-

---

[4] *See for e.g.* Department of Natural Resources Regulations, Series VII, 1978, §§ 2, 9 (noxious materials) §§ 6, 9 (landslides) and §§ 2, 7, 8, 9 (stream pollution).

neous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. 424 U.S. at 335.

This test is similar to the one we adopted in *North v. West Virginia Board of Regents*, ___ W.Va. ___, 233 S.E.2d 411 (1977) where we said:

> First, the more valuable the right sought to be deprived, the more safeguards will be interposed. Second, due process must generally be given before the deprivation occurs unless a compelling public policy dictates otherwise. Third, a temporary deprivation of rights may not require as large a measure of procedural due process protection as a permanent deprivation. 233 S.E.2d at 417.

Based on *Mathews* and *North*, cessation orders temporarily halting appellants' surface mining operations without hearings are constitutionally permissible. While appellants, as business entities, are entitled to no less due process protection than individuals, different types of deprivations require different types of procedure. Although cessation orders may well result in pecuniary loss, such loss must be balanced against the public welfare and the likelihood that a complex pre-cessation hearing procedure will be abused. We find the likelihood of abuse from a battery of lawyers on the other side far more likely. As the Legislature said, "[A]lthough surface mining provides much needed employment ... unregulated surface mining ... destroys or impairs the health, safety, welfare and property rights of the citizens of West Virginia. . . ." We do not find that a pre-cessation hearing would significantly enhance overall fairness above that afforded by a prompt post-cessation hearing; on the other hand, the possible damage to the public good caused by delayed cessation could be great and,

therefore, outweighs any possible loss to appellants and other surface mining operators.

Although the history of the extraction industry and the potential for abuse of the public by complex requirements of a pre-cessation hearing lead us to believe that a pre-cessation hearing is not mandated, a *prompt* post-cessation hearing must be accorded the operator. *W.Va. Code*, 20-6-14a [1971] provides in pertinent part:

> Any operator who believes he is aggrieved by the actions of the surface mining reclamation inspector may *immediately appeal* to the director, setting forth reasons why the operation should not be halted. The director shall determine when and if the operation may continue.

If the director upholds the cessation order or refuses to enter an order the surface mine operator may *immediately appeal* to the Reclamation Board, *W.Va. Code*, 20-6-28 [1967], which is required to hear the appeal "de novo" within twenty days. If the board upholds the cessation order, the operator may appeal directly to circuit court; *W.Va. Code*, 20-6-29 [1967]. We believe that *W.Va. Code*, 20-6-1 *et seq.* [1967] provides the mechanism for a prompt and adequate hearing subsequent to the issuance of a cessation order; however, the hearing must be prompt in *reality.* When *W.Va. Code*, 20-6-14a [1971] says the operator may *"immediately appeal"* it means just that—exactly the same way that the expression "readily available" *meant* "readily available" in relation to mine communications equipment in *Walls v. Miller, supra.* On remand, appellants may be able to demonstrate unnecessary protraction of hearing procedures, and if they do the circuit court may order a more expeditious procedure. In this regard we are being no more severe with the respondent administrative agency than we are with our own lower courts. In *Eastern Associated Coal Corp. v. Doe,* ___ W. Va. ___, 220 S.E.2d 672 (1975) we held in syllabus point 6:

> The need for alacrity is paramount with regard to temporary injunctions and a court may lose

its power to enforce its own temporary orders by being dilatory in providing a hearing on motions to dissolve, particularly when delay may precipitate the irretrievable surrender of constitutional rights.

This same reasoning applies to the respondent agency and its officers and employees; accordingly, the Department of Natural Resources may lose its jurisdiction to require cessation if it fails to accord an operator a prompt hearing upon demand in the same way that circuit courts may lose their jurisdiction to enforce temporary injunctions if they fail to give a prompt hearing on a motion to dissolve.

Therefore, for the reasons set forth above, the judgment of the Circuit Court of Kanawha County is reversed in part, affirmed in part, and the case is remanded for further proceedings consistent with this opinion.

> *Reversed in part,*
> *affirmed in part, and*
> *remanded.*

MILLER, JUSTICE, *concurring:*

While I concur with most of the majority opinion, I have a considerable reservation over the unnecessary dictum regarding loss of administrative jurisdiction because of delay in the proceedings. The majority relies solely on *Eastern Associated Coal Corp. v. Doe.,* ___ W. Va. ___, 220 S.E.2d 672 (1975), for the proposition that delay will result in loss of jurisdiction. The statement in *Eastern* was itself dictum, and suggested that a circuit court could lose jurisdiction in a contempt proceeding on a temporary injunction order if, where constitutional issues are involved, it fails to move with alacrity to hear a motion to dissolve the temporary injunction.

In my concurring opinion in *Smoot v. Dingess,* ___ W. Va. ___, 236 S.E.2d 468, 473 (1977), I expressed doubt as to the correctness of other portions of *Eastern* in regard to the scope of a jurisdictional attack available in contempt proceedings. Despite the suggestion in *Eastern,*

my research has not disclosed any case where, in the absence of some specific statute or rule, an appellate court has held that a trial court lost jurisdiction over a case because of its failure to act promptly.

To utilize *Eastern*, as does the majority, for the further proposition that an administrative agency will lose jurisdiction to hear a proceeding because it does not move with alacrity, is contrary not only to our case law, but to the general thinking in this field. In *Kanawha Valley Transportation Co. v. Public Service Commission*, ___ W.Va. ___, 219 S.E.2d 332 (1975), a taxicab company appealed an order revoking its certificate of authority, contending that there had been an unreasonable delay in the administrative proceedings. We stated:

> "[T]he mere delay in the disposition or decision of the case does not vitiate the order or judgment. If a decision is unduly delayed, a proceeding in mandamus may be instituted to compel a decision but not how to decide. *Village of Bridgeport v. Public Service Commission*, 125 W.Va. 342, 24 S.E.2d 285 (1943); Cf., *State ex rel. Cackowska v. Knapp*, 147 W. Va. 669, 130 S.E.2d 204 (1963)." [219 S.E.2d at 338]

A leading commentator in the field of administrative law summarized the various judicial remedies which are available to counteract administrative delay:

> "The first of these is judicial acceleration, which can be achieved by enjoining agency activity that is purposeless, unduly oppressive, or repetitive, by a remand to the agency with directions to proceed with all deliberate speed, or by mandamus requiring the agency to approve party action or show cause why no approval should be forthcoming. A second possibility is judicial preemption of the power to decide the substantive issues. This remedy, since it precludes the agency from making the initial determination pursuant to its statutory mandate, should be employed sparingly, if at all.
>
> "The third means of disposition is judicial termination of agency proceedings." [Goldman, *Ad-*

*ministrative Delay and Judicial Relief,* 66 Mich. L. Rev. 1423, 1453 (1968)]

With this range of judicial options available, the remedy of termination obviously can only be considered in the most extreme cases. Moreover, the harshness of termination of agency jurisdiction, which vitiates all further inquiry both administrative and judicial, can hardly ever be justified where, as here, the agency is charged with administering statutory and regulatory violations which relate to the health, safety and welfare of employees and the public in general.

While there may be those rare occasions where protracted agency delay causes irreparable harm to the constitutional rights of a party, which would warrant judicial termination of the agency proceeding, this is not such an occasion.