STATE *ex rel.* RICHARD G. WNEK

*v.*

GEORGE D. BLIZZARD, II, *State Compensation*

*Commissioner*

(No. 14476)

Decided July 17, 1979.

490

*McCamic & McCamic, Jolyon W. McCamic* for relator.

*John E. Dorsey, Legal Division, Compensation Comm.,* for respondent.

PER CURIAM:

In this original mandamus proceeding the relator, Richard C. Wnek, prays that we issue an order commanding the respondent, the State Workmen's Compensation Commissioner, to pay him temporary total disability benefits for the full and continuous period from the date of his injury until the date of entry of an order awarding permanent partial disability benefits.

At the outset, we note that the substantive issue raised in this proceeding (i.e. the nature of the relator's entitlement to temporary total disability benefits) is similar to the issues presented in *Mitchell v. State Compensation Commissioner*, No. 14400 (W. Va. Sup. Ct. App. May 22, 1979). The *Mitchell* case was under consideration in our Court at the time the relator instituted this proceeding.

The exhibits filed in support of the relator's petition for mandamus indicate that on October 4, 1977, the relator injured his back in the course of and as a result of his employment with Allied Chemical Corporation. The Workmen's Compensation Commissioner held that the injury was compensable and awarded the relator temporary total disability benefits.

Subsequently, by letter dated April 3, 1978, directed to the Commissioner, the employer protested the payment of further temporary total disability benefits. After re-

ceiving the protest the Commissioner conducted hearings on the questions raised. However, before filing on the motion for termination of temporary total disability payments, the Commissioner in September 1978, referred the claimant to an independent medical examiner, a Dr. Hughes, for the purpose of obtaining a permanent partial disability rating.

Although he had not yet received the report of Dr. Hughes, the Commissioner, on October 2, 1978, terminated the relator's temporary total disability benefits effective as of July 17, 1978.

On January 19, 1979, the Executive Secretary of the Workmen's Compensation Fund, by letter, advised all parties that based on the record developed in the evidentiary hearing, Dr. Hughes, the independent medical examiner, had not made a permanent partial disability recommendation but had suggested that a myleogram be performed. He requested that the relator consent to the myleogram and informed him that if he would, he would be reinstated to temporary total disability benefits commencing December 11, 1978. Such benefits would continue until Dr. Hughes accomplished his myleogram procedure. The relator consented, and the myleogram was performed.

After receiving the results of the myleogram, the Commissioner took the case under advisement. Before he arrived at a decision the relator, on March 20, 1979, instituted the present mandamus proceeding in our Court.

After the filing of this mandamus proceeding, the Commissioner, by order dated March 23, 1979, awarded the claimant 10% permanent partial disability. The order also stated:

"... it is hereby ordered that all payment of temporary total disability benefits subsequent to July 17, 1978, excepting temporary total disability benefits for the period December 13, 1978 through February 5, 1979 which were authorized

by the Commissioner pending diagnostic medical testing, be denied and the claim closed on a temporary total disability basis; . . . ."

The effect of the Commissioner's actions is that the claimant received no temporary total disability benefits for the periods July 17, 1978, through December 11, 1978, and February 5, 1979, through March 23, 1979, the date of the permanent partial disability award.

The relator takes the view that he has an absolute right to have the temporary total disability benefits continued from the time of injury until a permanent partial disability award is made. We disagree. In *Mitchell, supra,* we distinguished proceedings for termination of temporary total disability benefits brought under *W. Va. Code,* 23-5-1, from those brought under *W. Va. Code,* 23-5-1c. Because the employer here moved to terminate temporary total disability benefits more than thirty days after the award of the benefits, the proceedings, for the reasons set forth in *Mitchell,* clearly fall under *W. Va. Code,* 23-5-1c.

In syllabus point 1 of *Mitchell, supra,* we stated:

"Under the Workmen's Compensation Act, W. Va. Code, 23-1-1, *et seq.,* temporary total disability benefits should be terminated where the Commissioner finds that a claimant either has reached his maximum degree of medical improvement from the industrial accident, or has been medically certified to return to work."

We also stated in footnote 5 of *Mitchell:*

"The Commissioner also has the authority to invoke the issue of terminating temporary total disability benefits on his own initiative, when he has credible information in the claimant's file that maximum degree of improvement is reached or the claimant is certified to return to work."

Here, the record demonstrates that the Commissioner, before the termination of temporary total disability payments, attempted to have his independent medical ex-

aminer, Dr. Hughes, make a determination of permanent partial disability, but Dr. Hughes felt the need for a further diagnostic test, the myleogram. While it is desirable to award permanent partial disability at the time temporary total disability is terminated, there is nothing in the Workmen's Compensation Act that mandates this result such that the Commissioner can be compelled to do so by mandamus as is here sought. There are those cases where the claimant has reached maximum degree of improvement and the Commissioner is not able to obtain sufficient medical information to determine the percent of permanent partial disability. He may, nevertheless, terminate the temporary total disability. In this situation the claimant is not remediless as he can protest the termination on the basis that he has not reached the maximum degree of improvement. There was no such protest in this case.

It is true, however, that the Commissioner's October 2, 1978, termination of temporary total disability was effective as of July 17, 1978. This is contrary to the teachings of syllabus point 5 of *Mitchell* which states:

"In a proceeding under W. Va. Code, 23-5-1c, to terminate temporary total disability benefits, the proper date for termination of the benefits is the date of the Commissioner's termination order."

To this extent the Commissioner had a nondiscretionary duty to terminate the benefits as of the date of his order, and mandamus will lie to enforce the payment. *State ex rel. Island Creek Coal Co. v. Hanley,* 149 W. Va. 107, 138 S.E.2d 848 (1964); *State ex rel. Allstate Insurance Company v. Union Public Service District,* 151 W. Va. 207, 151 S.E.2d 102 (1966); *State v. Straughan,* 144 W. Va. 452, 108 S.E.2d 565 (1959); *Bridgeport v. Public Service Commission,* 125 W. Va. 342, 24 S.E.2d 285 (1943).

Because under syllabus point 5 of *Mitchell* the relator is entitled to temporary total disability benefits up to the date of the Commissioner's order, and because mandamus will lie against the State Workmen's Compensation Commissioner where he has failed to perform his

nondiscretionary duty in terminating temporary total disability benefits as of the date of his order where the proceeding is brought under *W. Va. Code*, 23-5-1c, we grant a writ of mandamus directing the Workmen's Compensation Commissioner to award the relator temporary total disability benefits for the period July 17, 1978, until October 2, 1978, in addition to those temporary total disability benefits awarded to the claimant by the Commissioner's order dated March 26, 1979.

*Writ as moulded awarded.*