IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2016 Term

_____

NO. 16-0228
_____

FILED

April 19, 2016

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

BRENT D. BENJAMIN, candidate for the
Supreme Court of Appeals of West Virginia,
Petitioner

v.

ELIZABETH D. WALKER, candidate for the
Supreme Court of Appeals of West Virginia;
West Virginia Secretary of State NATALIE TENNANT;
West Virginia State Election Commission members
GARY A. COLLIAS and VINCENT P. CARDI,

Respondents

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Tod J. Kaufman, Chief Judge
Civil Action No. 16-AA-7

REVERSED
_____

Submitted: March 23, 2016
Filed: April 19, 2016

Benjamin Bailey
Jonathan R. Marshall
Maryl C. Sattler
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, WV 25301
Attorneys for Petitioner
Benjamin

K&L GATES LLP
Thomas C. Ryan
210 Sixth Avenue
Pittsburgh, PA 15222
Attorney for Respondent
Walker

Richard L. Gottlieb
Webster J. Arceneaux, III
Spencer D. Elliott
LEWIS GLASSER CASEY & ROLLINS, PLLC
300 Summers St., Suite 700
Charleston, WV 25301
Attorneys for Respondents
Tennant, Collias & Cardi

ACTING CHIEF JUSTICE THOMAS H. KEADLE
delivered the Opinion of the Court.

CHIEF JUSTICE MENIS E. KETCHUM,
JUSTICE ROBIN JEAN DAVIS,
JUSTICE BRENT D. BENJAMIN,
JUSTICE MARGARET L. WORKMAN, and
JUSTICE ALLEN H. LOUGHRY II, deeming themselves
disqualified, did not participate in the decision of
this case.

SENIOR STATUS JUDGE THOMAS H. KEADLE,
as Acting Chief Justice,
SENIOR STATUS JUDGE JAMES O. HOLLIDAY,
JUDGE JOHN W. HATCHER, JR.,
JUDGE JAMES P. MAZZONE, and
JUDGE THOMAS C. EVANS, III, sitting by
temporary assignment.

SYLLABUS BY THE COURT

1.  "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong."  Syl. Pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

2.  "In cases where the circuit court has amended the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*."  Syl. Pt. 2, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

3.  "A regulation that is proposed by an agency and approved by the Legislature is a 'legislative rule' as defined by the State Administrative Procedures Act, *W. Va. Code*, 29A-1-2(d)  [1982], and such a legislative rule has the force and effect of law."  Syl. Pt. 5, *Smith v. West Virginia Human Rights Comm'n*, 216 W. Va. 2, 602 S.E.2d 445 (2004).

4.  "'It is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice.  It is as well the duty of a court to disregard a construction, though apparently

i

warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity.' Syllabus Point 2, *Click v. Click*, 98 W. Va. 419, 127 S.E. 194 (1925)." Syl. Pt. 2, *Chevy Chase Bank v. McCamant*, 204 W. Va. 295, 512 S.E2d 217 (1998).

5.      Under the "West Virginia Supreme Court of Appeals Public Campaign Financing Program," W. Va. Code § 3-12-1 *et seq.* (2014), where a candidate is required to file a report electronically and is unable to do so for reasons beyond his or her control, the West Virginia State Election Commission has discretion to grant a hardship exemption to the candidate as to the form of the report and to extend the deadline for filing of the report in its revised form.

6.      Under the "West Virginia Supreme Court of Appeals Public Campaign Financing Program," W. Va. Code § 3-12-1 *et seq.* (2014), where a qualifying contribution is made to a candidate in the form of an electronic payment, as authorized by W. Va. Code § 3-123(13), an electronic receipt containing a unique transaction identifier is a sufficient "signature" of the contributor within the meaning of W. Va. Code § 3-12-9(b)(2),

KEADLE, Acting Chief Justice:

Petitioner Brent D. Benjamin is a Justice of the Supreme Court of Appeals of West Virginia and a candidate seeking re-election to the Court in the upcoming May 10, 2016, non-partisan election. Although Justice Benjamin began his election campaign as a "traditional candidate," *i.e.*, a candidate financed by contributions from supporters, he later made the decision to enter the West Virginia Supreme Court of Appeals Public Campaign Financing Program, W. Va. Code § 3-12-1 *et seq.*, and filed his formal Declaration of Intent to do so on September 11, 2015. Thereafter, Justice Benjamin became a "participating candidate" under the Act.

On February 10, 2016, the West Virginia State Elections Commission ("the Commission") certified Justice Benjamin's campaign for public funding under the Act, overruling a number of challenges filed by Respondent Elizabeth D. Walker, a traditional candidate also seeking election to the Court.

Pursuant to the West Virginia Administrative Procedures Act, W. Va. Code § 29A-5-1 *et seq.*, Respondent Walker appealed the Commission's decision to the Circuit Court of Kanawha County, which ruled in favor of Walker on all issues and held that "[t]he SEC's certification of Justice Benjamin was clearly erroneous and must be REVERSED because it directly violated Walker's constitutional rights to free speech and substantive due process under the First and Fourteenth Amendments of the United States Constitution." This appeal followed.

1

After thorough review of the record Appendix, the parties' briefs and oral arguments, and the applicable law, we reverse the judgment of the court below and reinstate the decision of the Commission certifying Justice Benjamin.

## I.    FACTS AND PROCEDURAL HISTORY

West Virginia Code § 3-12-1 *et seq*. (2014), the "West Virginia Supreme Court of Appeals Public Campaign Financing Program" ("the Act"), was enacted by the West Virginia Legislature to "protect the Constitutional rights of voters and candidates from the detrimental effects of increasingly large amounts of money being raised and spent to influence the outcome of elections, protect the impartiality and integrity of the judiciary, and strengthen public confidence in the judiciary...." W. Va. Code § 3-12-1(10).    Pursuant to the Act as amended in 2013, there are now two types of candidates seeking a seat on the Supreme Court of Appeals of West Virginia: traditional candidates who proceed under traditional campaign finance rules, and "participating candidates" who apply to receive public financing under the Act.    Significantly, nothing in the statute prevents a traditional candidate from becoming a participating candidate, which is what happened in this case when Justice Benjamin filed his Declaration of Intent under the Act on September 11, 2015.[1]

---

[1] The Declaration must be filed prior to the end of the "qualifying period," see text *infra*, which begins on September 1 of the year preceding the election year and ends on the last Saturday in January of the election year.  W. Va. Code § 3-12-3(13).

There are two distinct time periods under the Act. The first is the "exploratory period," W. Va. Code § 3-12-3(5), which is the period during which a participating candidate may raise and spend contributions not to exceed $1,000.00 individually and not to exceed $20,000.00 in the aggregate, prior to the date on which the candidate files his or her formal Declaration of Intent.[2] The second distinct time period under the Act is the "qualifying period," W. Va. Code § 3-12-3(14), beginning upon the filing of the Declaration and concluding on January 30, during which a participating candidate must gather at least 500 "qualifying contributions" from West Virginia voters. W. Va. Code § 3-12-9(c). Each such contribution may be as little as $1.00, but can in no event exceed $100.00. W. Va. Code § 3-12-9(a). The total amount of the qualifying contributions must be no less than $35,000.00 and no more than $50,000.00. *Id*. If the aggregate amount of a participating candidate's contributions exceeds $50,000.00, the excess is paid over into the Fund. *Id.*

During both the exploratory and qualifying periods, a participating candidate is required to file monthly reports of contributions, expenditures and obligations "along with all receipt for contributions received during the prior month...," W. Va. Code § 3-12-13(b), such reports to be filed electronically with the Secretary of State. *Id*. As previously set forth, Justice Benjamin was a traditional candidate until September 11, 2015, when he filed his Declaration of Intent and became a participating candidate, and therefore had never been obligated to file any

---

[2] The Declaration may be filed anytime between September 1 of the year prior to the election and January 30 of the election year.

3

reports of contributions since his campaign was not governed by the Act. When he attempted to file his first such exploratory contributions report on October 1, 2015, together with his first qualifying contributions report, he discovered that the software utilized by the Secretary of State would not accept the former filing – a "computer glitch," as the Secretary of State's counsel characterized it before this Court.[3] Justice Benjamin's representative was assured that since he had in fact received no exploratory contributions in September, there was nothing for him to report in October under W. Va. Code § 3-12-13(b); and that all of the exploratory contributions he had received prior to becoming a participating candidate would be reported in the final accounting due two business days after the close of the qualifying period.[4]

After a participating candidate has collected the requisite number and amount of qualifying contributions, he or she applies to the Commission to be certified to receive public financing. W. Va. Code § 3-12-10(a). The application must include a sworn statement that the candidate has and will comply with all requirements of the Program. *Id*. The application, as well as the sworn statement, must be filed within two business days of the close of the qualifying period on January 30. W. Va. Code of State Rules §§ 146-5-6.1 & 6.2. In this regard, since

[3] There was never any problem with the filing of Justice Benjamin's participating contributions reports, which were duly filed on a monthly basis beginning October 1, 2015.
[4] These facts are reflected in an exchange of e-mails contained in the Appendix, and were confirmed by the Secretary of State in the Commission proceedings.

January 30, 2016, fell on a Saturday, the second business day was Tuesday, February 2, 2016.

On February 2, 2016, Justice Benjamin filed his application and sworn statement, as well as his summary of "[a]ll qualifying contributions received and funds expended or obligated during the qualifying period together with copies of any receipts not previously submitted for qualifying contributions." W. Va. Code § 3-12-13(c)(2). He did not, however, file his final report of all exploratory contributions received prior to becoming a participating candidate, W. Va. Code § 3-12-13(c)(1), because once again, the Secretary of State's computer system experienced a "glitch" and would not accept the filing. Thereafter, Justice Benjamin sought and was granted a hardship exemption and was permitted to file this final report in paper form on February 8, 2016.

On February 10, 2016, following multiple challenges filed by Respondent Walker and four lengthy hearings held by the Commission, the Commission certified Justice Benjamin for receipt of public funding under the Act. There are three specific provisions in the Act that are at issue in Walker's challenges:

First, W. Va. Code §§ 3-12-8(d) & 3-12-13(b), which require a participating candidate to file monthly reports of all exploratory and qualifying contributions received during the immediately preceding month;

5

Second, W. Va. Code § 3-12-13(c)(1), which requires a participating candidate to file a Final Summary Exploratory Financial Report no later than two business days after the close of the qualifying period; and

Third, W. Va. Code § 3-12-9(b)(2), which requires that every qualifying contribution to a candidate be acknowledged by a receipt that includes, *inter alia*, "the contributor's signature."[5]

With respect to the first statute, Respondent Walker contends that Justice Benjamin was required to file monthly reports of exploratory contributions from the outset of his campaign, or at the latest from and after October 1, 2015, and that his failure to do so disqualifies him from receiving public funding under the Act. With respect to the second statute, Respondent Walker contends that Justice Benjamin was required to file his Final Summary Exploratory Financial Report on or before February 2, 2016, and that although the Commission might have the authority to grant him a hardship exemption as to the *form* of the filing *(i.e.,* allow him to submit his report on paper), it had no discretion to grant him an extension of the *date* for filing. With respect to the third statute, Respondent Walker contends that none of the electronic contributions made to Justice Benjamin's campaign are valid because the electronic receipts for these contributions do not include a written signature.

---

[5] Respondent Walker challenged hundreds of Justice Benjamin's contributions on other grounds, and often on multiple grounds; but as discussed *infra*, the only ground raised on appeal was the lack of a signature on electronic contribution forms.

On appeal, the circuit court agreed with all of Respondent Walker's arguments, concluding that the Commission was clearly erroneous in its resolution of all three issues and that Respondent Walker's constitutional rights had been violated as a result.

## II. *STANDARD OF REVIEW*

This is an administrative appeal and our review is governed by the same statutory standard that applied to the circuit court's consideration of this matter. As set forth in syllabus point one of *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996): "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong. "

We further advised in *Muscatell* that "[i]n cases where the circuit court has amended the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*." Syl. Pt. 2, Muscatell v. Cline, 196 W. Va. 588, 474 S.E.2d 518 (1996).

### III. DISCUSSION

*Standing*

As a threshold matter, we conclude that under the specific facts of this case, Respondent Walker has been "adversely affected" by the Commission's decision, a prerequisite for standing to appeal under the Administrative Procedures Act, W. Va. Code § 29A-5-4(a), and the West Virginia Supreme Court of Appeals Public Financing Program, W. Va. Code § 3-12-10(i).

In this case, as in the companion case of *Wooten v. Walker, et al.*, No. 16-0226 (W. Va. filed April 19, 2016):

> Respondent Walker frames the argument as one involving "the fundamental and sacred constitutional rights of free speech and substantive due process…," but there is very little meat on these constitutional bones. This Court has held that "speech is chilled 'when an otherwise willing speaker is prevented from speaking, or cajoled into no longer speaking, by government conduct[,]'" *Men and Women Against Discrimination v. The Family Services Protection Board*, 229 W. Va. 55, 62, 725 S.E.2d 756, 763 (2011), and it would be a far stretch to conclude that the certification of [Justice Benjamin] for public funding in any way abridges or chills Respondent Walker's free speech rights. She is as free now as she was prior to February [10], 2016, when the Commission certified J[ustice Benjamin] for public financing, to conduct her campaign and articulate the reasons she believes herself to be a candidate worthy of support at the ballot box.

> In any event, "[i]nasmuch as this case may be decided on statutory grounds, this Court need not address the constitutional issue." *Hudson v. Bowling*, 232 W. Va. 282, 291 n. 13, 752 S.E.2d 313, 322 n. 13 (2013), citing *Lee Trace, LLC v. Raynes*, 232 W. Va. 183, 191, 751 S.E.2d 703, 711 (2013). Simply put, in this case Respondent Walker was a party to the proceedings held before the Commission, and the Commission's decision at issue in this case was made as a direct result of her challenges to the Benjamin campaign's certification. Under these circumstances, we can perceive of no

8

basis on which to conclude that Respondent Walker has no
first-party standing to appeal from the denial of those challenges.

*Wooten*, Slip Opinion at 4-5

.

### *Monthly Reports*

The court below held as a matter of law, citing W. Va. Code § 3-12-3(5), that Justice Benjamin's "exploratory period" began no later than February 18, 2015, and ended on September 11, 2015, when he filed his Declaration of Intent. The court further held, citing W. Va. Code § 3-12-13(b), that accordingly Justice Benjamin was required to file monthly exploratory reports throughout this period, up through and including October 1, 2015. Finally, the court held, citing W. Va. Code § 3-12-10(b)(5), that because Justice Benjamin did not file any of these monthly exploratory reports, he could not be certified for public funding since he had not "met all other requirements of this article...." An examination of the cited provisions reveals that the court completely misapprehended the specific language of the relevant statutes, and that the court apparently made, *sub silentio*, a finding of fact that is completely unsupported in the record.

We begin with W. Va. Code § 3-12-3(5), which provides:

"Exploratory period" means the period during which a participating candidate may raise and spend exploratory contributions to examine his or her chances of election and to qualify for public campaign financing under this article. The exploratory period begins on January 1 the year before the election in which the candidate may run for Justice of the Supreme Court of Appeals and ends on the last Saturday in January of the election year.

9

In the instant case, Justice Benjamin represented to the Commission, to the circuit court, and to this Court, that until September 11, 2015, when he filed a Declaration of Intent, he was not "attempting to be certified in accordance with [the Act]" *and was therefore not a participating candidate* as that term is defined in W. Va. Code § 3-12-3(11).

We now examine W. Va. Code § 3-12-13(b), which provides:

> During the exploratory and qualifying periods, a participating candidate or his or her financial agent shall submit, on the first of each month, a report of all exploratory and qualifying contributions along with their receipts and an accounting of all expenditures and obligations received during the immediately preceding month.

In the instant case, since Justice Benjamin became a participating candidate on September 11, 2015, he *was* required to file a report on October 1, 2015, of any exploratory and qualifying contributions he received in September, the "immediately preceding month." The record is undisputed, however, that Justice Benjamin did not receive any exploratory contributions in September, and therefore he had none to report, all of which the Secretary of State confirmed in an exchange of e-mails with the Benjamin campaign. [6]

---

[6] On October 1, 2015, Justice Benjamin did in fact attempt to electronically file a report showing the balance of exploratory contributions received by him prior to September 11, 2015, when he became a participating candidate. However, the computer software utilized by the Secretary of State would not allow him to do so. This is what precipitated the exchange of e-mails, in which employees of the Secretary confirmed that the exploratory contributions received while Justice

The court below acknowledged that Justice Benjamin had not received any exploratory contributions in September, but concluded that on October 1, 2015, he was nonetheless required to file after-the-fact monthly exploratory reports for January through August. In support of this conclusion, the court wrote that applying W. Va. Code § 3-12-13(b) as written "would undermine the letter and intent of W. Va. Code § 3-12-8(d)." This conclusion is puzzling, as the latter statute's requirement that "a participating or certified candidate" file monthly reports showing exploratory contributions received "during the prior month" is no different in practical effect from the former statute's requirement that "a participating candidate" file monthly reports showing exploratory contributions received "during the immediately preceding month." The court's conclusion also ignores the plain language of W. Va. Code § 3-12-13(c)(1), which anticipates precisely the type of situation that arose in this case and ensures that at the end of the day, there will be a full and final accounting of all contributions:

> (c)    No later than two business days after the close of the qualifying period, a participating candidate or his or her financial agent shall report to the Secretary of State on appropriate forms a summary of:
>
> (1)    All exploratory contributions received and funds expended or obligated during the exploratory period together with copies of any receipts *not previously submitted for exploratory contributions*[.]

(Emphasis supplied)

---

Benjamin was still a traditional candidate would be reported in the final report and accounting due on February 2, 2016. See W. Va. Code § 3-12-13(c).

In summary, until September 11, 2015, when Justice Benjamin became a "participating candidate," neither W. Va. Code § 3-12-3(5), the statutory provision defining an "exploratory period," nor W. Va. Code §§ 3-12-8(d) & 3-12-13(b), the provisions governing monthly exploratory reports, applied to him. The contrary conclusions of the court below were clearly erroneous. Further, to the extent that the court below apparently believed, and therefore found *sub silentio*, that Justice Benjamin always intended to seek public funding but waited as long as possible before making it official, there is not one shred of evidence in this voluminous record to support such a finding and it cannot serve as a basis for the court's rulings.

*The Final Summary Exploratory Financial Report*

One of the many documents required to be filed no later than the second business day after the close of the qualifying period is the Summary Exploratory Financial Report. W. Va. Code § 3-12-13(c)(1). This report is required to be filed electronically with the Secretary of State. *Id.* On February 2, 2016, when Justice Benjamin attempted to file his final report, as he had been instructed to do by the Secretary of State, see n. 5, *supra*, he discovered that the Secretary's software contained yet another "glitch" that would not allow the report to be filed. Accordingly, the Benjamin campaign sought and was granted a hardship exemption allowing it to file the final report in paper form on or before February 10, 2016. In granting the exemption, the Commission specifically found that Justice Benjamin was unable to file his report on February 2, 2016, for reasons beyond his control.

The circuit court's subsequent conclusion that Justice Benjamin was not entitled to a hardship exemption is both factually insupportable and legally erroneous. First, the Commission's determination that Justice Benjamin's inability to file was out of his control was supported by substantial evidence in the record, including testimonial statements by Secretary of State employees confirming the State's technical problems with its software. Under this Court's precedents, the Commission's determination was therefore binding on appeal. "Neither this Court nor the circuit court may supplant a factual finding of the Commission merely by identifying an alternative conclusion that *could* be supported by substantial evidence." *In re Queen*, 196 W. Va. 442, 446, 473 S.E.2d 483, 487 (1996) (emphasis supplied); *see also Webb v. W. Va. Bd. of Med.*, 212 W. Va. 149, 569 S.E.2d 225 (2002). The court below exceeded the permissible scope of review in ignoring the Commission's factual finding and concluding that Justice Benjamin's failure to timely file his final report was his own fault – a finding that could not stand even if the court were otherwise entitled to make it.[7]

---

[7] The court took the view that because the Secretary's software wouldn't accept a monthly exploratory report from Justice Benjamin, he should have anticipated that it wouldn't take a final exploratory report either. There are several problems with this analysis. First, the monthly report and the final report are two entirely separate documents, and problems with one do not constitute notice that there will be problems with the other. Second, the exchange of e-mails between the Benjamin campaign and the Secretary's employees specifically assured Justice Benjamin that the problems with his monthly report would be resolved with the filing of his final report. Third, we do not think it is incumbent upon a candidate to solve the Secretary of State's technical issues; to the extent that anyone was on notice that the Secretary's software was inadequate and needed to be fixed, it was the Secretary herself.

13

Second, the court erred in concluding that pursuant to W. Va. Code §§ 3-12-8(d) & 3-12-13(c)(1), the Commission had no authority to grant a hardship exemption as to the *timing* of a filing, only as to its *form*.  In this regard, we find that the court's reasoning is hairsplitting at best and sophistic at worst.  Justice Benjamin could not have discovered the problem with the Secretary's software until February 2, 2016, when he attempted to electronically file his final exploratory report.  For the Commission to grant an exemption as to form, i.e., an exemption allowing the Benjamin campaign to prepare a paper filing, without granting an extension of time for the paper filing to be prepared, would be to render the exemption meaningless.

It is well established that there are "certain circumstances in which an agency may perform a function that is implied, but not specifically permitted, by statute…," and that an agency's authority includes "'such other powers as are necessarily or reasonably incident to the powers granted.'"  *Walker v. W. Va. Ethics Comm'n*, 201 W. Va. 108, 121, 492 S.E.2d 167, 180 (1997), citing *Walter v. Ritchie*, 156 W. Va. 98, 108, 191 S.E.2d 275, 281 (1972).  We believe that the circumstances presented in this case are such as to require application of this principle.  Although Respondent Walker argues that the circuit court's interpretation of the law should be upheld because it does not specifically contradict any language contained in the statute, this Court has held that "'[i]t is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice.  It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when

14

such construction would lead to injustice and absurdity.'  Syllabus Point 2, *Click v. Click*, 98 W. Va. 419, 127 S.E. 194 (1925)."  Syl. Pt. 2, *Chevy Chase Bank v. McCamant*, 204 W. Va. 295, 512 S.E2d 217 (1998).

Accordingly, we hold that under the "West Virginia Supreme Court of Appeals Public Campaign Financing Program," W. Va. Code § 3-12-1 *et seq*. (2014), where a candidate is required to file a report electronically and is unable to do so for reasons beyond his or her control, the West Virginia State Election Commission has discretion to grant a hardship exemption to the candidate as to the form of the report and to extend the deadline for filing of the report in its revised form.

*Qualifying Contributions*

Pursuant to W. Va. Code § 3-12-10(g) and W. Va. Code of State Rules § 146-5-7.1, "[a]ny person may challenge the validity of any contribution listed by a participating candidate by filing a written challenge with the State Election Commission setting forth any reason why the contribution should not be accepted as a qualifying contribution."  Respondent Walker took full advantage of these provisions, filing challenges to the vast majority of Justice Benjamin's contributions, more than 500 challenges in all, on a variety of grounds including: receipts not on forms specifically provided for the purpose; receipts missing certain information; contributors weren't registered voters; and paper receipts for electronic contributions did not contain the contributors' signatures.

15

At its first hearing held on February 3, 2016, the Commission spent seven hours going through the first group of 163 challenges one by one, upholding some challenges and denying others. Seven of the challenges involved electronic contributions, most made through PayPal, and the Commissioners struggled to determine whether the identifying account numbers on the computerized receipts could be deemed to be "signatures" within the meaning of W. Va. Code § 3-12-9(b)(2), which requires, *inter alia*, that "(b) Each qualifying contribution shall be acknowledged by a written receipt that includes: * * * (2) For qualifying contributions of $25 or more, the contributor's signature…." Ultimately, the Commissioners sustained Respondent Walker's challenges to six of the seven electronic contributions.

At its next hearing held the following day, the Commission reversed its earlier decisions with respect to six of the electronic contributions, based on additional information submitted by the Benjamin Campaign. It then declined to consider and rule upon 365 additional challenges filed by Respondent Walker, including approximately 185 challenges to electronic contributions, finding that Walker had failed to carry her burden of persuasion by failing to present any evidence in support of the additional challenges.

The parties devote many pages of their briefs to the issue of whether Respondent Walker waived her right to raise the issue of electronic contributions on appeal, by failing to provide support for her challenges in the proceedings before the

16

Commission. The facts underlying the waiver argument are unique and considerations of equity are at play in this case. The Commission correctly found that W. Va. Code of State Rules § 146-5-7.3 requires "[t]he challenger [to] attach any relevant evidence, affidavits, or notarized statements to the [challenge] form…," and that Respondent Walker had not done so. The problem in this case is that the Commission had not enforced or even mentioned this rule on the first day of proceedings; the Secretary of State had taken it upon herself to gather all of the documentation relevant to the initial group of challenges and bring it to the hearing, and the Commission dutifully considered 163 challenges despite the fact that the Secretary, not Respondent Walker, had provided the evidence. It wasn't until the end of that first day, when everyone realized that there were 365 more challenges still to come, that the Secretary abruptly decided 'this isn't my job.' Respondent Walker's representative was specifically told that he would have to bring any relevant documentation to the hearing the next day, and it is undisputed that he did not do so and did not proffer any explanation. Accordingly, since the Secretary hadn't brought any documentation either, the Commission declined to consider the second-day challenges because it had nothing to look at.

Although this Court believes that the Commission was correct in concluding that W. Va. Code of State Rules § 146-5-7.3 required Respondent Walker, not the Secretary of State, to provide any documentation required to evaluate the challenges, we also believe it was unfair for the Secretary to undertake the responsibility at the outset and then abruptly shift course at the end of the first full

17

day of proceedings. The Secretary's actions were particularly unfair in light of the extremely short time frames set forth in § 146-5-7.3, which in this case required Respondent Walker's challenges to be filed on the same day that Justice Benjamin's final report was filed, and argued the following day.

Accordingly, we find that on administrative appeal, the court below was within its discretion to address the electronic contribution issue on the merits, notwithstanding Respondent Walker's failure to make a proper record that would have allowed the Commission to make a ruling in the first instance. Syl. Pt. 2, *Muscatell*, *supra*. We turn now to the substantive issue.

We note at the outset of our discussion that when the dust had cleared in the proceedings before the Commission, the Commissioners found that Justice Benjamin had "obtained the required number, which is five hundred minimum, and amount, which is thirty-five thousand dollars minimum, of qualifying contributions...." W. Va. Code ∞ 3-12-9(a) & (d), W. Va. Code of State Rules § 146-5-5.1-5.3. The only issue Respondent Walker raised on appeal with respect to qualifying contributions involved Justice Benjamin's electronic contributions, specifically, whether electronic receipts are "signatures" under W. Va. Code § 3-12-9(b)(2). This issue is dispositive of the case, since absent the 192 electronic contributions, Justice Benjamin would not have the requisite 500 qualifying contributions which he was statutorily required to obtain pursuant to W. Va. Code § 3-12-9(a) before the end of the qualifying period.

18

The court below concluded that electronic signatures were not sufficient under the Act because, in the court's words, "handwritten signatures are needed to investigate and verify credibility of the donor...." The court cited no authority for this proposition, and indeed there is none. Nothing in the Act imposes a duty on anyone to "investigate and verify credibility" of contributors by using the signatures on their voters registration cards as exemplars and then comparing the signatures on their contribution receipts. Further, such an analysis is a practical impossibility; under the Act and the rules, the time frames for challenges are not sufficient for anyone to perform close to 200 handwriting analyses, and none of the Commissioners has the competence to perform it in any event, none being handwriting experts. As Respondent Commissioner Collias stated when this issue arose on the first day of hearings:

> Well, he [a contributor] could have registered to vote thirty, forty years ago when he was eighteen, so that signature could be thirty or forty years old on the one, and the other it was a few months ago. I mean we don't have the competency to be declaring that the signatures are from different people. They may look different, but maybe the person signs different things differently. I mean, I don't know, but I'm not willing to go there.

Finally, and critically, the court below failed to consider that its decision invalidating electronic signatures also invalidated, as a practical matter, W. Va. Code § 3-12-3(13), which provides that a "'[q]ualifying contribution' means a contribution received from a West Virginia registered voter ... in the form of cash, check or money order ... *or in the form of an electronic payment* or debit or credit card payment...." (Emphasis supplied).

19

We need not resolve the issue on these grounds, however, because the court below plainly erred in ignoring the effect of the "Uniform Electronic Transactions Act" ["the UETA"], W. Va. Code § 39A-1-1 *et seq*. (2002), on this case. Forty-seven states have adopted the UETA,[8] which establishes that in all situations not specifically exempted, such as some transactions under the Uniform Commercial Code and the "creation and execution of wills, codicils or testamentary trusts...," W.

[8] Ala. Code §§ 8-1A-1 to -20 (LexisNexis Supp. 2002); Alaska Stat. §§ 09.80.010- .195 (2008); Ariz. Rev. Stat. Ann. §§ 44-7001 to -7051 (2003 & Supp. 2009); Ark. Code Ann. §§ 25-32-101 to -121 (2002 & Supp. 2001); West's Ann. Cal. Civ. Code §§ 1633.1-.17 (West Supp. 2010); Colo. Rev. Stat. Ann. §§ 24-71.3-101 to -121 (Wet 2008 & Supp. 2009); Conn. Gen. Stat. Ann. §§ 1-266 to 286 (Wet 2007 & Supp. 2009); Del. Code Ann. Tit. 6, §§ 12A-101 to -117 (2005 & Supp. 2008); Fla. Stat. Ann. §§ 668.50 (West 2004 & Supp. 2010); Haw. Rev. Stat. §§ 489E-1 to -19 (LexisNexis 2009); Idaho Code Ann. §§ 28-50-101 to -120 (2005); Ind. Code Ann. §§ 26-2-8101 to -302 (LexisNexis 2005 & Supp. 2009); Iowa Code Ann. §§ 554D.101 - .124 (West 2001 & Supp. 2010); Kan. Stat. Ann. §§ 16-1601 to -1620 (2000); Ky. Rev. Stat. Ann. §§ 369.101 - .120 (West 2006 & Supp. 2009); La. Rev. Stat. Ann. §§ 9:2601 to -2620 (2005 & Supp. 2010); Me. Rev. Stat. Ann. Tit. 10, §§ 9401 to -9507 (2009); Md. Code Ann., Com. Law §§ 21-101 to -120 (LexisNexis 2005 & Supp. 2009); Minn. Stat. Ann. §§ 325L.01 - .19 (West 2000); Mass. Ann. Laws ch. 110G §§ 1-18 (LexisNexis 2005 & Supp. 2009); Mich. Comp. Laws Ann. §§ 450.831 - .849 (West 2002 & Supp. 2009); Miss. Code Ann. §§ 75-12-1 to -39 (West 2004 & Supp. 2009); Mo. Ann Stat. §§ 432.200 - .295 (West Supp. 2010); Mont. Code Ann. §§ 30-18-101 to -118 ((2008); Neb. Rev. Stat. Ann. §§ 86-612 to -643 (LexisNexis 2007); Nev. Rev. Stat. §§ 719.010 -.350 (2009); N.H. Rev. Stat. Ann. §§ 294-E:1-20 (Supp. 2009); N.J. Stat. Ann. §§ 12A:12.1 to -26 (West 2004 & Supp. 2009); N.M. Stat. §§ 14-16-1 to 19 (2003 & Supp. 2009); N.C. Gen. Stat. §§ 66-311 to -339 (2009); N.D. Cent. Code §§ 9-16-01 to -18 (2006 & Supp. 2009); Ohio Rev. Code Ann. §§ 1306.1-.23 (LexisNexis 2009); Okla Stat. Ann. Tit. 12, §§ 15-101 to -121 West 2001 & Supp. 2010); Or. Rev. Stat. Ann. §§ 84.001-.061 (West 2003 & Supp. 2009); 73 Pa. Cons. Stat. §§ 2260.101-.903 (West 2008 & Supp. 2009); R.I. Gen. Laws §§ 42-127.1-1 to -20 (2006); S.C. Code Ann. §§ 26-6-10 to -210 (2007); S.D. Codified Laws §§ 53-12-1 to -50 (2004 & Supp. 2009); Tenn. Code Ann. §§ 47-10-101 to -123 (2001 & Supp. 2009); Tex. Bus. & Co. Code Ann. §§ 322.001-.021 (Vernon 2009); Utah Code Ann. §§ 46-4-101 to -503 West 2004 & Supp. 2009); Vt. Stat. Ann. tit. 9 §§ 270-290 (2006); Va. Code Ann. §§ 59.1-479 to -497 (2006 & Supp. 2009); W. Va. Code §§ 39A-1-1 to -17 (LexisNexis 2004 & Supp. 2009); Wis. Stat. Ann. §§ 137-11-.26 (West 2009); Wyo. Stat. Ann. §§ 40-21-101 to -119 (2009).

Va. Code § 39A-1-3(b)(1) & (2), electronic and non-electronic records are equal. The language of the UETA is clear and unambiguous: W. Va. Code § 39A-1-7(d) provides that "[i]f a law requires a signature, an electronic signature satisfies the law." In turn, an electronic signature is defined under the Act as "an electronic sound, symbol or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." W. Va. Code § 39A-1-2(8). The Act unequivocally instructs that "[i]n a proceeding, evidence of a record or signature may not be excluded solely because it is in electronic form." W. Va. Code § 39A-1-13.

Not surprisingly, most of the case law which has developed under the UETA deals with its application to contract disputes and commercial transactions. *E.g., Shroyer v. New Cingular Wireless Services, Inc.*, 2007 U.S. App. LEXIS 1950 (9th Cir. 2007) (electronic signature can be created over the phone using an IVR process); *Johnson v. Astrue*, 2009 U.S. Dist. LEXIS 130558 (E.D. Cal., June 18, 2009) (physician's digital signature satisfied Social Security regulation which required that "[a]ll consultative examination reports will be personally reviewed and signed by the medical source who actually performed the examination"); *Alliance Laundry Systems, LLC v. Thyssenkrupp Materials, NA*, 570 F. Supp.2d 1061 (E.D. Wisc. Aug. 5, 2008) (electronic signature could satisfy the UCC's statute of frauds signature requirement for the sale of goods priced at $500.00 or more); *Stevens v. Publicis, S.A.,* 50 A.D.3d 253 (N.Y. App. Div. 2008*), leave to appeal dismissed*, 892 N.E.2d 399 (2008) (series of e-mails between contracting parties, with the parties' names typed

21

therein, satisfied the requirements of an enforceable "no oral modifications" clause in contract); *Barwick v. Government Employee Insurance* Co., Inc., 2011 Ark. 128 (Supreme Court of Arkansas 2011) (insured's electronic signature on computer application qualifies as a written rejection of benefits); *Kluver v. PPL Montana, LLC*, 368 Mont. 101, 293 P.3d 817 (2012) (UETA applied to memorandum of understanding between landowners and electric power companies).  The disputes in these cases are generally evidentiary in nature, i.e., whether the electronic signature is actually attributable to a certain individual, or whether an individual intended to be bound by his or her electronic signature.

We have located only two cases in which the courts considered electronic signatures in the context of election-related laws.  In *Anderson v. Bell*, 2010 Utah 47, 234 P.3d 1147 (2010), Mr. Anderson had submitted a petition seeking to be placed on the ballot as an unaffiliated candidate in the upcoming Utah gubernatorial race.  Utah law required that an unaffiliated candidate collect the signatures of 1,000 registered voters before his or her name could be placed on the statewide ballot.  Mr. Anderson's petition contained two types of signatures: handwritten signatures, and electronic signatures entered through a computer website.  The petition was rejected by the Office of the Lieutenant Governor of Utah on the ground that the electronic signatures did not constitute "signatures" as required under the Utah Election Code.

22

The Utah Supreme Court reversed, holding that electronic signatures met the requirements of the Utah Election Code. Construing a provision identical to W. Va. Code § 39A-1-7(d), "[i]f a law requires a signature, an electronic signature satisfies the law…," the Court held:

> This language could not be more straight forward … Mr. Anderson has thus done exactly what section 46-4-201 permits. He used electronic signatures to satisfy the Election Code's demand that unaffiliated candidates collect and submit the signatures of 1,000 registered voters in order to get his name onto the statewide ballot.

*Anderson*, 234 P.3d at 1153.

*Anderson* was overridden by the Utah Legislature the following year, by amendment to the Election Code specifically exempting the "signature" requirement for petitions submitted by independent candidates seeking to be placed on the ballot from the ambit of Utah's UETA.

In *Ni v. Slocum*, 196 Cal. App.4th 1636 (Cal. App. 1st Dist. 2011), a number of registered voters had signed petitions seeking to put a Proposition (for legalization of marijuana) on the ballot. Some of the signatures were electronic, and the issue before the court was whether the California Election Code's requirement that a voter "personally affix" his or her signature was satisfied by electronic signature. The court held that the Election Code required a "wet signature," not an electronic signature, for the following reasons:

1. The law governing Propositions requires that every voter's signature on a petition be witnessed and thereafter certified by a "circulator," a requirement that

23

could not be met where voters utilized their phones, tablets and computers to sign the petition online;

2.   In fact, allowing electronic signatures on a petition would completely eliminate the function of the "circulator," thus substantively changing the law;

3.   The law requires election officials to verify the residence of every voter signing a petition, which would be impossible where the voter signed the petition electronically since electronic receipts contain identifying information but *not* a residential address;

4.   The law requires more than a voter's signature; it requires that the voter "personally affix" that signature, words that have no meaning or application unless the voter has a pen in his or her hand; and

5.   The law specifically states that its provisions are mandatory "notwithstanding any other provision of law…," which means that the law governing Propositions, not the Uniform Electronic Transaction Act, controls.


Although we agree with much of the reasoning of the *Ni* court, we find that the case is wholly inapposite to the case at bar. West Virginia Code § 3-12-1 *et seq*. contains no requirement that signatures be witnessed and certified by anyone, let alone a "circulator" whose specific duties are set forth in the law. Our law requires only the signature of a contributing voter, not that the voter "personally affix" that signature. Nothing in the law requires the Election Commission to verify every

24

contributor's residence, in the absence of a challenge;[9] and indeed, as set forth at pp. __, *supra*, the law does not give the Commissioners enough time to undertake such a task even if they were inclined to do so. There is no language in § 3-12-1 *et seq*. that would make its provisions mandatory "notwithstanding any other provision of law," specifically, the Uniform Electronic Transactions Act.

Finally, and fundamentally, the West Virginia Supreme Court Public Financing Program, W. Va. Code § 3-12-1 *et seq*., specifically seeks "to *encoura*ge participation in the program….," *Wooten v. Walker, et al*., No. 16-0226 (W. Va. filed April 19, 2016), Slip Opinion at 12 (emphasis supplied); and consistent therewith, the Act permits contributions to be made electronically, W. Va. Code § 3-12-3(13). For this Court to effectively read the latter provision out of the Act by finding that an electronic signature is not a signature under W. Va. Code § 3-12-9(b)(2) would *discourage* many participating contributions. Absent specific statutory language or compelling policy reasons, we decline to engage in such a crabbed reading of § 3-12-9(b)(2).

In this case, as in *Anderson,* the statutory provisions at issue could not be more straightforward.[10] Additionally, in this case all considerations of policy

---

[9] In the event of a challenge, the challenger, not the Commission or the Secretary of State, is required to put forth evidence that the address shown on a receipt does not match the contributor's address in the election rolls. At that point, the Commission's duty would be to rule on the challenge.

[10] The fact that *Anderson* was subsequently overridden by new legislation does not indicate that the court's reasoning was flawed. The Utah Legislature, apparently intending to make it more difficult for non-affiliated candidates to appear on the

25

militate in favor of application of UETA to the issue at hand. Finally, in this case there are no evidentiary issues of intent or authenticity; indeed, it is undisputed in the record that the electronic contribution receipts submitted by Justice Benjamin contain unique transaction identifiers allowing the contributors to be identified.[11] Accordingly, we hold that under the "West Virginia Supreme Court of Appeals Public Campaign Financing Program," W. Va. Code § 3-12-1 *et seq*. (2014), where a qualifying contribution is made to a candidate in the form of an electronic payment, as authorized by W. Va. Code § 3-12-3(13), an electronic receipt containing a unique transaction identifier is a sufficient "signature" of the contributor within the meaning of W. Va. Code § 3-12-9(b)(2),

In this case, Justice Benjamin submitted documentation evidencing 192 electronic qualifying contributions made to his campaign, such documentation containing unique transaction identifiers tracing back to the respective contributors and satisfying the definition of an electronic signature contained in W. Va. Code §39A-1-2(8). Thus, the Commission correctly concluded that the Benjamin campaign had obtained the requisite number of qualifying contributions and otherwise satisfied all statutory requirements to be certified for public funding under the Act.

---

ballot, amended the Election Code to specifically exempt election laws from the ambit of the UETA.

[11] When Respondent Walker raised the "signature" issue, Justice Benjamin's campaign contacted a number of contributors and asked them to supplement their electronic receipts with paper receipts containing pen-and-ink signatures. In the limited time available, a number of contributors did so.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the Circuit Court of Kanawha County is hereby REVERSED, and the decision of the West Virginia State Election Commission is hereby reinstated in it entirety.

Reversed.

27