IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2016 Term

_____

NO. 16-0226

_____

**FILED**

**April 19, 2016**

**released at 3:00 p.m.**
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

WILLIAM R. WOOTON, candidate for the
Supreme Court of Appeals of West Virginia,
Petitioner

v.

ELIZABETH D. WALKER, candidate for the
Supreme Court of Appeals of West Virginia;
West Virginia Secretary of State NATALIE TENNANT;
West Virginia State Election Commission members
GARY A. COLLIAS and VINCENT P. CARDI;
West Virginia State Auditor GLEN B. GAINER, III;
And West Virginia State Treasurer JOHN D. PERDUE,

Respondent

_____

Certified Question from the Circuit Court of Kanawha County
The Honorable Charles E. King, Jr., Judge
Civil Action No. 16-AA-13

CERTIFIED QUESTION ANSWERED

_____

Submitted: March 23, 2016
Filed:  April 19, 2016

Robert M. Bastress, Jr.
Post Office Box 1295
Morgantown, WV 26507-1295

Robert V. Berthold, Jr.
BERTHOLD LAW FIRM PLLC
Charleston, WV 25335

K&L GATES LLP
Thomas C. Ryan
210 Sixth Avenue
Pittsburgh, PA 15222
Attorney for Respondent
Walker

Thomas Patrick Maroney
608 Virginia Street, East, Floor 2
Charleston, WV 25301
Attorneys for Petitioner Wooton

Richard L. Gottlieb
Webster J. Arceneaux, III
Spencer D. Elliott
LEWIS GLASSER CASEY &
ROLLINS, PLLC
300 Summers St., Suite 700
Charleston, WV 25301
Attorneys for Respondents
Tennant, Collias & Cardi

ACTING CHIEF JUSTICE THOMAS H. KEADLE
delivered the Opinion of the Court.

CHIEF JUSTICE MENIS E. KETCHUM,
JUSTICE ROBIN JEAN DAVIS,
JUSTICE BRENT D. BENJAMIN,
JUSTICE MARGARET L. WORKMAN, and
JUSTICE ALLEN H. LOUGHRY II, deeming themselves
disqualified, did not participate in the decision of
this case.

SENIOR STATUS JUDGE THOMAS H. KEADLE,
as Acting Chief Justice,
SENIOR STATUS JUDGE JAMES O. HOLLIDAY,
JUDGE JOHN W. HATCHER, JR.,
JUDGE JAMES P. MAZZONE, and
JUDGE THOMAS C. EVANS, III, sitting by
temporary assignment.

SYLLABUS BY THE COURT

1.      "The appellate standard of review of questions of law answered and certified by a circuit court is *de novo*."  Syl. Pt. 1, *Gallapoo v. Wal-Mart Stores, Inc.*, 197 W. Va. 172, 475 S.E.2d 172 (1996).

2.      "A regulation that is proposed by an agency and approved by the Legislature is a 'legislative rule' as defined by the State Administrative Procedures Act, *W. Va. Code*, 29A-1-2(d)  [1982], and such a legislative rule has the force and effect of law."  Syl. Pt. 5, *Smith v. West Virginia Human Rights Comm'n*, 216 W. Va. 2, 602 S.E.2d 445 (2004).

3.      The West Virginia State Election Commission has discretion to certify a participating candidate for public funding under the "West Virginia Supreme Court of Appeals Public Campaign Financing Program," W. Va. Code § 3-12-1 *et seq.* (2014), notwithstanding the candidate's failure to meet the time deadlines set forth in W. Va. Code of State Rules §§ 146-5-6.1 & 6.2, where the candidate has substantially complied with all requirements set forth in the Act and the rules and where there is no showing of prejudice.

KEADLE, Acting Chief Justice:

Petitioner William R. Wooton is a candidate seeking election to the Supreme Court of Appeals of West Virginia, and a "participating candidate" as that term is defined in the "West Virginia Supreme Court of Appeals Public Campaign Financing Program," W. Va. Code § 3-12-3(11) (2014). On February 5, 2016, the West Virginia State Elections Commission ("the Commission") certified Petitioner Wooton's campaign for public funding under the Act, overruling a challenge filed by Respondent Elizabeth D. Walker, a non-participating candidate also seeking election to the Court.

Pursuant to the West Virginia Administrative Procedures Act, W. Va. Code § 29A-5-1 *et seq.*, Respondent Walker appealed the Commission's decision to the Circuit Court of Kanawha County, which certified the following question to this Court:

> Whether the West Virginia State Election Commission's certification of Respondent [now Petitioner] Wooton for public financing of his candidacy for the West Virginia Supreme Court under West Virginia Code § 3-12-1, et seq., was valid.

The court answered the question in the negative.

After thorough review of the record Appendix, the parties' briefs and oral arguments, and the applicable law, we modify and answer the certified question, reverse the judgment of the court below, and reinstate the decision of the Commission certifying Petitioner Wooton.

1

## I. FACTS AND PROCEDURAL HISTORY

West Virginia Code § 3-12-1, *et seq.* (2014), known as the West Virginia Supreme Court of Appeals Public Campaign Financing Program, was enacted by the West Virginia Legislature to "protect the Constitutional rights of voters and candidates from the detrimental effects of increasingly large amounts of money being raised and spent to influence the outcome of elections, protect the impartiality and integrity of the judiciary, and strengthen public confidence in the judiciary...." W. Va. Code § 3-12-1(10).

A candidate seeking public financing must file a Declaration of Intent prior to the end of the qualifying period, W. Va. Code § 3-12-7, which period begins on September 1 of the year preceding the election year and ends on the last Saturday in January of the election year. W. Va. Code § 31-12-3(13). After filing the Declaration of Intent but before certification for public financing, a candidate must gather at least 500 "qualifying contributions" from West Virginia voters. W. Va. Code § 3-12-9(c). Each contribution can be as little as $1.00, but can in no event exceed $100.00. W. Va. Code § 3-12-9(a). The total amount of the contributions must be no less than $35,000.00 and no more than $50,000.00. *Id.* [1]

After a participating candidate has collected the requisite number of qualifying contributions, and within two business days of the close of the qualifying

---

[1] If the aggregate amount of a candidate's qualifying contributions exceeds $50,000.00, the excess is paid over into the Fund. *Id.*

2

period,[2] he or she files a final report and applies to the Commission to be certified to receive public financing. W. Va. Code § 3-12-10(a); W. Va. Code of State Rules §§ 146-5-6.1, 6.2. The candidate's application must include a sworn statement that he or she has and will comply with all requirements of the program. *Id*. In the instant case, Petitioner Wooton filed his final report and all required substantive information on February 2, 2016, but did not file his sworn statement until February 3, 2016, one day late. This is the sole basis upon which Respondent Walker challenges Wooton's certification in this appeal. [3]

The Commission overruled the challenge, finding that it had the authority to certify the Wooton campaign for public financing notwithstanding the one-day delay in submission of the sworn statement. On appeal, the circuit court certified and answered the question set forth above, concluding, by necessary implication,[4] that the Commission did *not* have such authority. Appeal to this Court followed, and the case was set for briefing and argument on an expedited schedule.

---

[2] The qualifying period ends on January 30, which in 2016 fell on a Saturday; thus, February 2, 2016, was the second business day.

[3] Although Respondent Walker filed a blanket challenge to all of Petitioner Wooton's contributions by letter of February 2, 2016, "reserv[ing]the right to submit challenge forms as soon as possible…," she never pursued the matter.

[4] The certified question and answer are framed in wholly conclusory language and give no hint as to the court's *ratio decidendi*.

## II. STANDARD OF REVIEW

It is well established that "[t]he appellate standard of review of questions of law answered and certified by a circuit court is *de novo*." Syl. Pt. 1, *Gallapoo v. Wal-Mart Stores, Inc.,* 197 W. Va. 172, 475 S.E.2d 172 (1996).

## III. DISCUSSION

*Standing*

As a threshold matter, we conclude that under the specific facts of this case, Respondent Walker has been "adversely affected" by the Commission's decision, a prerequisite for standing to appeal under the Administrative Procedures Act, W. Va. Code § 29A-5- 4(a), and the West Virginia Supreme Court of Appeals Public Financing Program, W. Va. Code § 3-12-10(i).

Respondent Walker frames the argument as one involving "the fundamental and sacred constitutional rights of free speech and substantive due process...," but there is very little meat on these constitutional bones. This Court has held that "speech is chilled 'when an otherwise willing speaker is prevented from speaking, or cajoled into no longer speaking, by government conduct[,]'" *Men and Women Against Discrimination v. The Family Services Protection Board*, 229 W. Va. 55, 62, 725 S.E.2d 756, 763 (2011), and it would be a far stretch to conclude that the certification of Petitioner Wooton for public funding in any way abridges or chills Respondent Walker's free speech rights. She is as free now as she was prior to February 5, 2016, when the Commission certified Petitioner Wooton for public

4

funding, to conduct her campaign and articulate the reasons she believes herself to be a candidate worthy of support at the ballot box.

In any event, "[i]nasmuch as this case may be decided on statutory grounds, this Court need not address the constitutional issue." *Hudson v. Bowling*, 232 W. Va. 282, 291 n. 13, 752 S.E.2d 313, 322 n. 13 (2013), citing *Lee Trace, LLC v. Rayne*s, 232 W. Va. 183, 191, 751 S.E.2d 703, 711 (2013). Simply put, in this case Respondent Walker was a party to the proceedings held before the Commission, and the Commission's decision at issue in this case was made as a direct result of her challenge to the Wooton campaign's certification. Under these circumstances, we can perceive of no basis on which to conclude that Respondent Walker has no first-party standing to appeal from the denial of that challenge.

*Mandatory Disqualification/Substantial Compliance*

Although the question certified by the court below is very broad, the briefs and arguments of the parties make it clear that the sole issue for decision in this case is very narrow: whether Petitioner Wooton's failure to file his sworn statement on or before February 2, 2016, the second business day after the close of the qualifying period, mandated his disqualification under the Act. Respondent Walker argues that "a deadline is a deadline," and that under the Act and the legislative rules, W. Va. Code of State Rules § 146-5-1 *et seq*., the West Virginia State Election Commission has no discretion to excuse or extend any deadline for any reason. Further, Respondent Walker makes a policy argument that any exercise of

5

discretion on the part of the Commission will erode public confidence in the integrity of the public financing program. *Cf. Brady v. Hechler*, 176 W. Va. 570, 574, 346 S.E.2d 546, 550 (1986).

In contrast, Petitioner Wooton argues that the legislative rules, and in particular W. Va. Code of State Rules §§ 146-5-6.1 & 6.2, are mere "administrative guide[s]," and that nothing in the Act or the legislative rules imposes an obligation on the Commission to disqualify any candidate on the basis of a late filing of his or her sworn statement. Petitioner Wooton also makes a policy argument that denying public funding to a participating candidate who makes any procedural misstep, no matter how inconsequential, would defeat the reform goals of the Act.

We begin with the acknowledgment that "[a] regulation that is proposed by an agency and approved by the Legislature is a 'legislative rule' as defined by the State Administrative Procedures Act, *W. Va. Code*, 29A-1-2(d) [1982], and such a legislative rule has the force and effect of law." Syl. Pt. 5, *Smith v. West Virginia Human Rights Comm'n*, 216 W. Va. 2, 602 S.E.2d 445 (2004). Accordingly, we reject any suggestion that W. Va. Code of State Rules §§ 146-5-6.1 & 6. 2 are mere "guides," a term with no legal significance, or are otherwise of no consequence.

This, however, is hardly the end of the inquiry. It is well settled under this Court's precedents that "not all technical procedural violations merit relief where there is substantial compliance with *substantive* law." *West Virginia Alcohol*

6

*Beverage Control Administration and Division of Personnel v. Scott*, 205 W. Va. 398, 403, 518 S.E.2d 639, 644 (1999) (Workman, J., dissenting) (emphasis in original). *E.g., State ex rel. Catron v. Raleigh County Bd. of Educ.*, 201 W. Va. 302, 496 S.E.2d 444 (1997) (substantial compliance in filing grievance); *State ex rel. Cooper v. Caperton*, 196 W. Va. 208, 470 S.E.2d 162 (1996) (substantial compliance with publication requirements); *Hare v. Randolph County Bd. of Educ.*, 183 W. Va. 436, 396 S.E.2d 203 (1990) (substantial compliance with evaluation procedures leading up to termination from employment); *Vosberg v. Civil Serv. Comm'n of West Virginia*, 166 W. Va. 488, 275 S.E.2d 640 (1981) (substantial compliance with grievance procedure). This Court has even applied the principle of substantial compliance in cases involving procedural requirements set forth in the West Virginia Constitution. *E.g., State ex rel. Smith v. Kelly*, 149 W. Va. 381, 141 S.E.2d 142 (1965) (substantial compliance with notice requirements prior to statewide vote on proposed constitutional amendment); *Morgan v. O'Brien*, 134 W. Va. 1, 60 S.E.2d 722 (1948) (to same effect).

In *In re Burks*, 206 W. Va. 429, 525 S.E.2d 310 (1999), a DUI case, the circuit court reversed a license revocation order issued by the Commissioner of the Division of Motor Vehicles because the arresting officer had failed to mail his "Statement of Arresting Officer" to the Commissioner within forty-eight hours of the driver's arrest, as required by statute. This Court reversed, holding that "[a] law enforcement officer's failure to strictly comply with the DUI arrest reporting time requirements of *W. Va. Code*, 17C-5A-1(b)[1994] is not a bar or impediment to ...

7

administrative action based on the arrest report, unless there is actual prejudice to the driver as a result of such failure." *Burks*, Syl. Pt. 1, in part, 206 W. Va. at 430, 525 S.E.2d at 311.

Applying these principles to the instant case, we conclude that Petitioner Wooton substantially complied with the Act and the rules. From the time he became a participating candidate, through and including February 2, 2016, he timely filed every form, every disclosure, and every piece of information required – with the exception of one piece of paper, a *pro forma* sworn statement, which he filed one day late. The record is devoid of evidence that Petitioner Wooton's tardy submission of the statement was of any consequence to anyone, let alone caused any prejudice or harm to anyone.

Nothing in the history or language of the Act suggests that the Commission intended its legislative rules, authorized by W. Va. Code § 3-12-11(d), to constitute a complicated regulatory trap for the unwary. Additionally, nothing in the history or language of the Act suggests that a violation of any rule, no matter how inconsequential, carries a mandatory "death penalty" for a participating candidate. *See, e.g, State ex rel. Bumgardner v. Mills*, 132 W. Va. 580, 53 S.E.2d 416 (1949); *State ex rel. Hall v. Gilmer County Court*, 87 W. Va. 437, 105 S.E. 693, 694-95 (1921); *State v. Bd. of Canvassers*, 87 W. Va. 472, 105 S.E. 695 (1921). As this Court stated in *Bumgardner*, 132 W. Va. at 595, 53 S.E.2d at 428:

> This Court has held that prior statutory provisions [governing
> verified statements of financial transactions], although exacting

promptness in the preparation and the delivery of the expense account of every candidate for public office, manifest 'no express or implied determination to disqualify permanently one who is tardy in that respect from discharging the functions and receiving the emoluments of the office to which he has been elected, but only until he has filed the required statements.'

The case of *Brady v. Hechler*, 176 W. Va. 570, 346 S.E.2d 546 (1986), relied upon by Respondent Walker, does not compel a different conclusion. In *Brady*, this Court issued a writ of mandamus compelling the Secretary of State and the ballot commissioners of the Ninth Senatorial District of West Virginia to strike Tracy W. Hylton's name from the May 13, 1986, ballot, for failure to timely file his certificate of candidacy with the Secretary of State as required by W. Va. Code § 3-5-7 (1985). A certificate of candidacy is a very different thing from the *pro forma* sworn statement at issue in this case; submission of the former sets in motion all of the machinery necessary to prepare the ballots, while submission of the latter is merely the final ministerial step allowing issuance of a check to a participating candidate who has otherwise fulfilled every obligation imposed by law on him or her. The only person prejudiced by late submission of the sworn statement is the candidate, who will suffer a delay in receipt of the funding necessary to run his or her campaign.

Two further considerations guide this Court's resolution of the issue presented in this case. First, although we do not find it necessary to determine whether the time periods contained in W. Va. Code of State Rules §§ 146-5-6.1 & 6.2 are "arbitrary or capricious," *Grim v. Eastern Electric, LLC*, 234 W. Va. 557, 565, 767

9

S.E.2d 267, 275 (2014), citing Syl. Pt. 2, *W. Va. Health Care Cost Review Authority v. Boone Memorial Hospital*, 196 W. Va. 326, 472 S.E.2d 411 (1996), or inconsistent with "the legislative intent expressed in the controlling or substantive statute which the rule is promulgated to implement," *Harrison v. Commissioner, Division of Motor Vehicles*, 226 W. Va. 23, 31, 697 S.E.2d 59, 67 (2010), we do find that they are so abbreviated as to invite exactly the type of problems that arose in this case. The documents required to be filed within two business days of January 30, the end of the qualifying period, include, *inter alia*, a full accounting, with documentation, of all qualifying contributions received by the candidate during the month of January – in Petitioner Wooton's case, 754 contributions totaling $46,952.00.[5] To make things worse, W. Va. Code of State Rules § 146-5-7.3 requires that any challenges to these contributions must be "filed with, and received by, the Secretary [of State] within two business days after the close of the qualifying period of the filing of a candidate's Application for Certification, whichever is earlier." This means, in practical terms, that a challenger has hours, or perhaps even minutes, to file timely challenges. In short, the restrictive time periods set forth in the relevant regulations set the stage for exactly what happened in this case: a candidate timely filed a 29 page report, which included information and documentation of 754 contributions, but failed to include one additional piece of paper, the *pro forma* cover letter; and

---

[5] We reject Respondent Walker's argument that Petitioner Wooton was negligent in "waiting until the last minute" to file his paperwork, as under the Act he could not compile his final accounting until after the last qualifying contribution in January, 2016, had come in.

then the objection that followed was untimely because the challenger didn't know she *had* a challenge until after the time period had already expired.[6]

The second consideration which guides our resolution of this case is the complete lack of prejudice to Respondent Walker, or anyone else, resulting from Petitioner Wooton's submission of his sworn statement one day late. Nowhere in her brief or in oral argument was Respondent Walker able to articulate any prejudice resulting from the Commission's decision to certify Petitioner Wooton, other than the conclusory assertion that any exercise of discretion by the Commission in enforcing procedural deadlines will cast a "shroud of doubt" over the election. We disagree. In this case, as noted above, the only prejudice was suffered by Petitioner Wooton himself, as his late filing of the sworn statement resulted in a delay in his receipt of the funding he needs to run his campaign.

In West Virginia Code § 3-12-2(10), the Legislature articulated the critical objectives of the Act:

> As demonstrated by the 2012 West Virginia Supreme Court of Appeals
> Public Campaign Financing Pilot Program, an alternative public
> campaign financing option for candidates running for a seat on the
> Supreme Court of Appeals will ensure the fairness of democratic elections
> in this state, protect the Constitutional rights of voters and candidates
> from the detrimental effects of increasingly large amounts of money

---

[6] It is questionable whether Respondent Walker had the right to challenge in this case at all, since the Act, W. Va. Code § 3-12-10(g), and the regulations, W. Va. C.S.R. § 146-5-7.1, provide only for challenges to qualifying contributions, not to any other act or omission on the part of a participating candidate. The Commission found that it should, in equity, consider the challenge, and Petitioner Wooton mentions but does not contest the point. Accordingly, this Court has reached the merits of the challenge.

being raised and spent to influence the outcome of elections, protect the impartiality and integrity of the judiciary, and strengthen public confidence in the judiciary….

As this Court recently noted in a workers' compensation case, "[t]here is no rational basis to *discourage* medically necessary treatment; this reasoning is wholly incompatible with the Act's benevolent objectives." *Moore v. K-Mart Corporation*, 234 W. Va. 658, 664, 769 S.E.2d 35, 41 (2015) (emphasis in original). Similarly, in the instant case, there is no rational basis to deny funding to a participating candidate who has substantially complied with the whole welter of statutes and rules governing the "West Virginia Supreme Court of Appeals Public Campaign Financing Program." The Act specifically seeks to encourage participation in the program, not to erect trap doors through which participating candidates plunge upon the slightest misstep.

Mindful of the important objectives served by the Act, and in light of the foregoing authorities, we conclude, and so hold, that the West Virginia State Election Commission has discretion to certify a participating candidate for public funding under the "West Virginia Supreme Court of Appeals Public Campaign Financing Program," W. Va. Code § 3-12-1 *et seq*., notwithstanding the candidate's failure to meet the time deadlines set forth in W. Va. Code of State Rules §§ 146-5-6.1 & 6.2, where the candidate has substantially complied with all requirements set forth in the Act and the rules and where there is no showing of prejudice.

12

Although in this case the Commission made no specific findings of substantial compliance or lack of prejudice, we find it unnecessary to remand for the Commission to consider these issues. The evidence in the voluminous record submitted by the parties is undisputed that Petitioner Wooton substantially complied with the Act and the rules, and that Respondent Walker suffered no prejudice from the one day delay in submission of Wooton's cover letter. No contrary inference could be drawn, and therefore this case may be finally resolved in this appeal.

*The Certified Question*

As set forth herein, the question answered and certified by the court below gives no hint as to the reasoning employed by the court, and therefore serves no purpose other than to announce winners and losers. Because this is an important case involving an issue likely to recur in proceedings before the West Virginia State Election Commission, this Court will modify the certified question in order to make clear the *ratio decidendi* of our decision, thereby providing guidance to the Commission and other interested parties:

> Whether the West Virginia State Election Commission has discretion to certify a participating candidate for public funding under the "West Virginia Supreme Court of Appeals Public Campaign Financing Program," W. Va. Code § 3-12-1 *et seq.*, notwithstanding the candidate's failure to meet the time deadlines set forth in W. Va. Code of State Rules §§ 146-5-6.1, 6.2, where the candidate has substantially complied with all requirements set forth in the Act and the rules and where there is no showing of prejudice.

13

We answer this question in the affirmative, and find that in this case the Commission acted within its discretion in certifying the campaign of Petitioner Wooton for public funding under the Act.

## IV.  CONCLUSION

For the foregoing reasons, we modify the certified question to apply to the specific facts of this case, and answer the modified certified question in the affirmative.  The decision of the Circuit Court of Kanawha County is hereby REVERSED, and the decision of the West Virginia State Election Commission is hereby reinstated in its entirety.

Certified Question Answered.